## Paul C. Hager, Clerk, v. Robinson.

## Paul C. Hager, Clerk, v. Turner, et al.

(Decided June 20, 1913.)

## Appeals from Johnson Circuit Court.

1. Elections—Primary Elections—Not an Election Within Meaning of Constitution—Legislature may Enact Law Requiring Nominations to be Made by and Prescribe Manner and Conduct of.—As a primary election is not an election with the meaning of the Constitution, and there is no provision of that instrument which prohibits the Legislature from enacting a law requiring party nominations to be made by means of primary elections, it necessarily follows that it was competent for it to provide by law that nominations of party candidates for office shall be made in no other way; to prescribe the time of holding and manner of conducting the primary elections by which such nominations are to be made; and also to impose such reasonable conditions and tests as to party membership or affiliation, as shall entitle those seeking party nominations to get their names upon their party's ballot as candidates.

2. Elections—Primary Elections—Act Provided For—Constitutionality of.—The Act entitled "An Act to provide for the nomination of candidates by political parties at primary elections and for placing the names of candidates on the ballots to be voted for at the general election, and prescribing penalties for the violation thereof;" approved March 5, 1912, is not in any of the particulars indicated in these cases, unconstitutional.

3. Elections—Primary Elections—Act Providing For—Constitutionality of.—The provision in section 6 of the act, which requires the petition of one seeking to have his name placed on his party's ballot as a candidate at the primary election, for its nomination to an office, to state that he "affiliated with such party and supported its nominees at the last regular election," is not an unreasonable requirement nor is it violative of sections 1, 6, or 147, of the Constitution; the first declaring freedom and equality, inherent and in alienable rights common to all men; the second that all elections shall be free and equal; and the third, that all elections shall be free and equal; and the third, that all elections by

the people "shall be by secret official ballot, furnished by public authority to the voters at the polls, and marked by each voter at the polls and then and there deposited."

4. Elections—Primary Elections—Supporting Party Nominees—How Support May Be Rendered.—The words "supported its nominees" do not necessarily mean that the candidate should have voted for such nominees. Without voting at all, he may have given them active support by advocating their claims, assisting in getting out the vote and, &c., yet by accident or unavoidable casualty have been prevented from attending or voting at the election. The requirement, even if compliance therewith be construed to amount to an admission from the candidate that he voted at the last regular election for the nominees of the party whose nomination he would seke in the primary, does not violate section 147, Constitution, which was designed to protect the secrecy of the ballot, and not the secrecy of party or political belief.

5. Elections—Primary Elections—Object of Act Providing For.—The primary election statute was enacted to promote and maintain party organization and the integrity of party nominations; therefore, open declaration of party allegiance, both on the part of candidates who seek party nominations and voters who confer them, is absolutely essential to the proper working of any primary law.

6. Elections—Primary Elections—Exclusion of Candidate From Ballot—Judgment—Court of Appeals Without Jurisdiction to Review. —As section 27 of the primary election act, restricts candidates whose names may have been wrongfully or erroneously excluded from the primary election ballot, to the summary remedy prescribed therein for righting such wrong or error, and expressly disallows to the candidate or wrongdoer any appeal from the judgment or order the circuit or county judge may enter in the proceeding, the Court of Appeals is without jurisdiction to entertain an appeal from or to review such judgment or order.

7. Statutes—Construction of.—It is a well known rule of law that when a statute has created a right and provided a remedy for the enforcement of that right, the claimant of such right must pursue the remedy the statute prescribes to the exclusion of all other remedies.

8. Elections—Primary Elections.—As section 27 only requires the candidate, whose name has been wrongfully or erroneously refused a place on a party ballot in the primary, to resort to the remedy and follow the procedure it prescribes, it does not prevent electors of the party, whose rights under the act may have been violated, from proceeding by mandamus, as allowed by section 474 Civil Code, to enforce such rights; nor does section 27 deprive them of the right of appeal.

D. J. WHEELER, M. M. LOGAN, Assistant Attorney General for appellant.

ROBT. H. WINN, GEORGE DU RELLE, H. W. BATSON and M. C. KIRK for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Dismissing appeal in first case and reversing in second case.

These cases were orally argued at the same time, and were together submitted for decision. On the 15th day of May, 1913, the appellee, E. W. Robinson, desiring to become a candidate for the Republican nomination for the office of assessor of Johnson County at the primary election to be held in that county August 2, 1913, tendered to the appellant, Paul C. Hager, clerk of the Johnson County Court, and offered to file in his office, a petition setting forth his qualifications for that office and requesting appellant as such clerk to cause his name to be printed on the official nominating ballot of the Republican party as a candidate for the nomination for the office of assessor to be voted for at such primary election.

The petition is as follows:

"Petition for Assessor of Johnson County. To Paul C. Hager, County Clerk Johnson County, Kentucky, and to the members of the Republican Party of Johnson County, Kentucky: I, E. W. Robinson, reside at Paintsville, Johnson County, Kentucky. I am a member of the Republican party and I am forty-nine years of age and possess all the other legal qualifications necessary to entitle me to hold the office of assessor of said county, to-wit: I am above the age of twenty-four (24) years, a citizen of Paintsville, Johnson County, Kentucky, and have resided in said county and state for more than two years and more than one year next preceding the primary election to be held in Johnson County for the year 1913, in which I am a candidate for the office of County Assessor. If I am nominated for said office of assessor at the primary election to be held on the first Saturday in August, next, I will accept the nomination and will not withdraw, and, if elected, will qualify as such officer. Dated at Paintsville, on this the 15th day of May, 1913.

"E. W. ROBINSON."

Tendered with the above petition and at the same time offered to be filed were four other petitions, each from a different voting precinct of Johnson County, and each signed by numerous electors of the precinct from which it came, representing, altogether, more than three per cent and not less than ten per cent of the total vote of the Republican party in Johnson County cast for presidential electors at the last election for president of the

United States. As the four petitions were worded alike only one of them is here copied:

"We the undersigned qualified electors of Paintsville No. 2 Precinct, Johnson County, State of Kentucky, and members of the Republican party, hereby nominate E. W. Robinson, who resides at Paintsville, county of Johnson, as a candidate for the office of assessor at the primary to be held the first Saturday in August, 1913, as representing the principles of said party; and we declare that we intend to support the candidate herein named." (Signed) James W. Turner and fourteen others.

It will be observed that the petition of the appellee, Robinson, contains all the statements prescribed by section 6, chapter 7, Acts of the General Assembly, 1912, entitled, "An Act to provide for the nomination of Candidates by Political Parties at Primary Elections, and for placing the names of candidates on the ballots to be voted for at the general election and prescribing penalties for the violation thereof," Approved March 5, 1912, except that it omits to state that the appellee, Robinson *affiliated with the Republican party and supported its nominees at the last regular election,* for which reason appellant, as clerk, refused to receive or file the petition, or those of the electors, or to place the name of the appellee, Robinson, on the ballots to be voted for as a Republican candidate for the nomination for assessor at the primary election to be held on the first Saturday in August, 1913.

Following this refusal these actions were brought, the one by the appellee, Robinson, and the other by the appellees, James W. Turner and others, in their own behalf and for other signers of the elector's petitions, too numerous to be made parties, praying that appellant, as clerk, be compelled by mandamus to receive and file the petitions in question and proceed to place the name of the appellee, Robinson, on the official ballot of the Republican party at the August primary as a candidate for the Republican nomination for the office of assessor of Johnson County. When the cases came on for hearing appellant filed a demurrer to each of the petitions, which the circuit court overruled. Appellant refused to plead further and judgment was thereupon entered in each case awarding the mandamus prayed. From those judgments these appeals are prosecuted.

It was contended by the Assistant Attorney General in argument that section 27 of the Primary Election Act deprives this court of jurisdiction to entertain these appeals.

That section is as follows:

"Whenever it shall be made to appear by affidavit filed in the circuit court that an error or omission has occurred or is about to occur in the placing of any name on an official primary ballot, or that an error or wrong has been committed or is about to be committed in printing such ballot, or in the performance of any duty imposed by this act, the court shall order the officer or person charged with such error, wrong or neglect, forthwith to correct the error, desist from the wrongful act or perform the duty, or show cause why he should not be compelled to do so. Failure to obey the orders of the judge or court shall be contempt of court and punishable as such. If the circuit court be not in session in the county the circuit judge shall hear and determine the complaint in vacation, unless he be absent from the county, in which case said affidavit shall be filed before the judge of the county court who shall have full power to hear and determine the complaint and make appropriate orders therein. The orders of a court or judge under this section shall be final and not appealable. Only candidates may institute proceedings under this section.

In case a charge under this section is directed against the Secretary of State or any other State officer, the affidavit shall be filed in the Franklin Circuit Court."

It will be observed that "only candidates may institute proceedings under this section;" if they do so and the relief asked for is denied by the court or judge, the orders or judgment of the court or judge determining the matter "shall be final and not appealable." In other words, this section compels the candidate to have determined, by the method or procedure therein declared, whether a wrong has been done him in refusing his name a place on his party's ballot in the primary, yet refuses him or the alleged wrongdoer, the right of appeal, however much either may be dissatisfied with the judgment rendered by the court or judge. To say that this is unwise, not to say unjust legislation, does not make it unconstitutional or even unreasonable, as the right of appeal is not an inherent or constitutional right, but a right which the Legislature may in its discretion confer or withhold. Turner v. Commonwealth, 89 Ky.,

78; Vinegar v. Commonwealth, 104 Ky., 106. When conferred it is usually coupled with conditions which must be observed, in order that the Appellate Court may have jurisdiction to entertain the appeal. The remedy provided by section 27, is not merely cumulative, as argued by counsel for appellees, which, if true, would allow the candidate to elect between it and the remedy of mandamus allowed by section 474, Civil Code, but it is an exclusive remedy, for it is a well known rule of law that when a statute has created a right and provided a remedy for the enforcement of that right, the claimant of such right must pursue the remedy the statute prescribes, to the exclusion of all other remedies. Grigsby, &c. v. Barr, &c., 84 Ky., 330; Russell, &c. v. Muldraugh's Hill, &c., Turnpike Road Co., 76 Ky., 307; Kidder v. Boone Co., 12 Harris, 196; Smith v. Drew, 5 Mass., 516.

Nor do we agree with the contention of appellee's counsel that section 27 is obnoxious to section 59, subsection 29, or section 60, Constitution. It is not special or class legislation. While it does confer upon candidates, as a class, a right and remedy not conferred upon any other class of citizens, both apply to all candidates alike and are not necessary to any other class of citizens, legally speaking.

It was evidently the Legislature's intention that candidates should be compensated for the deprivation of the right of appeal by the speedy effect of the remedy. However, the fact that a statute which creates a new right or remedy expressly disallows an appeal, is not class or special legislation within the inhibitions of the constitution; the right of appeal not being an inherent or constitutional right.

We can well apprehend and deplore the possibilities of disaster to the rights, both of candidates and voters, that may flow from the committal into so many different judicial hands, some of them unskilled and others, perhaps, partisan, the summary and final correction of the evils designed to be prevented by the section of the act in question; but it is not our province to condemn the policy of the Legislature in failing to provide for a revision of the acts of these judicial officers. This defect in the statute, and others that may yet be discovered, should and doubtless will be corrected at the next session of the General Assembly, which will convene at the beginning of the coming year. It follows from what has been said that the appellee, Robinson, in suing for the

writ of mandamus, mistook his remedy, and the circuit court should not have granted the writ. Being the candidate whose petition to be placed on the ballot was not received or filed by appellant, his remedy was to proceed by affidavit filed in the circuit court as required by section 27 of the Primary Election Act. However, whether the judgment awarding Robinson the writ of mandamus be regarded as void, or the petition treated as an affidavit and the proceedings thereunder, including the judgment, a substantial compliance with section 27 of the Act, supra, it is manifest that the language of the section does not allow the clerk, any more than the candidate, the right of appeal, or confer upon this court jurisdiction to entertain the appeal. We cannot, therefore, consider the appeal in the case of Hager v. Robinson. We are clearly of the opinion, however, that the appeal in the case of Paul C. Hager, Clerk, v. Jas. W. Turner and others, is properly before us. As voters aggrieved by the action of the clerk in failing to receive and file the petition of Robinson, the candidate for their party's nomination, and their petitions asking that his name be placed as such on the primary ballots, the appellee, Turner, and his associate petitioners, had the right to test the clerk's authority for rejecting the petitions and in doing so attack the validity of the Act under which he claimed such authority. In seeking the writ of mandamus they properly availed themselves of the remedy provided by section 474, Civil Code, and, as previously stated, while section 27 of the Act under consideration, would not have allowed an appeal by the candidate if the judgment of the circuit court had sustained the clerk's refusal to place his name on the primary ballot, and does not allow an appeal by the clerk from the judgment, there is nothing in that section, which prevents the clerk's taking an appeal from the judgment in favor of the appellees, Turner and others.

In Yates, County Clerk, v. Collins, 118 Ky., 682, we held that injunction would lie at the suit of a resident voter and taxpayer of the county of Kenton to restrain the clerk from carrying out the provisions of an Act of the General Assembly, approved February 11, 1904, entitled "An Act to amend an Act, entitled an Act, to regulate elections in this Commonwealth, approved June 30, 1892," if the Act, which required the registration of all qualified voters in all cities and towns of the State, without regard to class or population, should be

held unconstitutional. The constitutionality of the Act was, however, upheld, but in respect to the right of the plaintiff to maintain the action, we in the opinion said:

"It is conceded that the appellee is a male citizen, resident and taxpayer of Kenton County, Kentucky; that he possesses the qualifications under the constitution and laws of the State, which entitle him to vote at the approaching November election, and no objection is urged against his right to institute this action. Nor do we question his right to do so, for, in order to carry out the provisions of the Act, supra, some expense for printing must be incurred by each county of the state through its county clerks, which is required to be paid out of the county levy. If, therefore, the Act in question is unconstitutional, this expense should not be placed upon the counties, and a taxpayer like the appellee has such an interest in the matter as will entitle him to sue, as he has done, to test its constitutionality."

In Louisville Home Telephone Co. v. City of Louisville, 130 Ky., 611, the Telephone Company sued to compel the city by mandamus to sell a telephone franchise, resting its right to maintain the action upon its alleged purpose to become a bidder at such sale. In approving the right of the Telephone Company to maintain the action, we said:

"The question in this case is therefore one of public right, and the object is the enforcement of public duty. And, as we have seen from the authority, quoted, supra, in such state of case a relator in a mandamus proceeding need not show that he has any special interest in the result, but it is sufficient for him to show that he is a citizen and resident, and engaged in business in the city, and as such interested in the execution of the law, and that, inasmuch as a public duty here sought to be enforced is not one due to the State in its sovereign capacity, the decided preponderance of American authority is, that private persons may move for a mandamus to enforce such public duty." Washington ex rel Harvey v. Mason, 9 L. R. A. (N. S.), 1221.

The right of appellees Jas. W. Turner and others to maintain this action is stronger than that of either of the plaintiffs in the cases cited. They are not only qualified voters and members of the political party of which Robinson seeks to be made the nominee at the approaching primary election, but they actually assisted in his attempt to get his name upon the ballot by tendering to

the clerk, in support of his right to do so, the petition required by section 6 of the Primary Act, in doing which, they were endeavoring to perform a duty they owed to their party and to the public as well. It can well be said, therefore, that the rejection of their petition and that of their candidate by the clerk, if without legal cause, as alleged, constituted a violation of their personal rights, and, at the same time, prevented them from performing a duty which they owed to their party and to the state of which they are citizens.

This brings us to a consideration of the objections urged to the constitutionality of the Act, which are raised by both appeals.

It is insisted for appellees that section 6 of the Act violates sections 1, 6 and 147 of the Constitution of the state; the first declaring freedom and equality inherent and inalienable rights common to all men; the second, that all elections shall be free and equal; and the third, that all elections by the people "shall be by secret official ballot, furnished by public authority to the voters at the polls, and marked by each voter in private at the polls, and then and there deposited."

We have twice held that there is no provision of the Constitution having reference to primary elections. Montgomery v. Chelf, 118 Ky., 766, the first case in which we so held, involved the validity of a former primary election stautue which was attacked upon the ground that it was obnoxious to section 6 of the Constitution. In rejecting this contention we said:

"But it is urged that, if the statutes mean this, (i. e. that each candidate should pay his proportion of the cost of holding the primary) it conflicts with the Constitution (section 6), which provides that 'all elections shall be free and equal.' That section of the Constitution has no reference to primary elections, but applies only to general elections. Section 148 of the Constitution provides that not more than one election can be held in any district in each year, except as otherwise provided in the Constitution. The Constitution no where makes provision for holding primaries. Therefore, if the word 'election,' as used in the Constitution, includes primary elections, the Constitution effectually prohibits the holding of primary elections at all. There is a general election every year, and if a primary cannot be held in the same year with a general election, it cannot be held at all. To make it more plain, if the Consti-

tution only authorizes one election to be held within a year, and a primary election is an election within the meaning of the Constitution, then to hold a primary election and a general election the same year would be violative of this provision of the Constitution."

In Hodge v. Bryan, 149 Ky., 110, we again held that a primary election is not an election in the meaning of the Constitution. In this case we had under consideration the validity of certain features of the present primary law; with respect to which we said:

"The Constitution does not require the legislature to enact primary election laws. It makes no reference to them, therefore, as the Constitution does not prohibit them, the legislature had a right to pass such a law. In Montgomery v. Chelf, 118 Ky., 766, this court expressly declared that the word, 'election' as used in the Constitution, had no application to primary elections. The word 'election' as used in the primary law does not refer, in fact, to the election of an officer. It only means that the people should on the first Saturday of August in each year select, by means of a primary election, persons as a candidate to be voted for at the general election held the following November. There is no election in August; it is only a selecting or naming of candidates to be actually voted for at the November general election."

It being manifest that there is nothing in the Constitution prohibiting the legislature from enacting a law requiring party nominations to be made by means of primary elections, it necessarily follows that it has the power to provide by law that nominations of party candidates for office shall be made in no other way; to prescribe the time of holding and manner of conducting the primary elections by which such nominations are to be made; and also to impose such reasonable conditions and tests as to party membership or affiliation, as shall entitle those seeking party nominations to get their names upon their party ballots as candidates. In other words, the power that may thus be exercised by the legislature, need not be expressly conferred upon it by the Constitution, it is sufficient if its exercise be not prohibited by that instrument. Recognition of this doctrine has been expressed by Judge Cooley in his work on Constitutional Limitations (7th Ed.) sections 236-237, as follows:

"The rule of law upon this subject appears to be that, except where the Constitution has imposed limits upon legislative power, it must be considered as absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people of the State, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against the unwise or oppressive legislation within constitutional bounds is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil, but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the constitution.* * * Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being prima facie valid must be enforced unless restrictions upon the legislative authority can be pointed out in the constitution, and the case shown to come within them.''

Authority should not be required to convince a reflecting mind that a primary election, held merely to name the candidates of a political party or parties, is not an election within the meaning of the provisions with respect to elections, found in the Constitution. In every instance those provisions refer to the election of officers and not to the nomination of candidates. It is undoubtedly the general rule that state legislatures have the inherent power to enact reasonable primary election laws. In some jurisdictions provisions have been made for such laws by amendments to the state constitutions giving the Legislature express authority to pass laws regulating the conduct of primary elections. But, in a majority of the states, perhaps, constitutional authority for the enactment of such laws is wanting; however, it has nowhere been held that the absence of such express constitutional authority will prevent the Legislature of a state from enacting such a law and making it compulsory in its operation. State v. Nuchal (La., 1908), 46 So. Rep., 430; State v. Miles, 210 Mo., 127; Healt v. Whipf (S. Dak., 1908), 117 N. W. Rep., 521; Morrow v. Whipf (S. Dak., 1908), 22 S. D., 146; State v. Felton, &c., 77 Ohio St. Rep., 554.

It is conceded by the appellant that the petition tendered him as county clerk by the appellees, Turner and others, complied with the requirements of section 6 of the

,primary election act, but insisted that he had the right
to refuse to receive it, because the petition of Robinson,
the candidate in whose behalf it was offered to be filed,
failed to state that he "affiliated with the Republican
party and supported its nominees at the last regular elec-
tion," for which reason it was his duty to reject both pe-
titions.  On the other hand, it is appellees' contention
(and such was the ground upon which the circuit court
awarded the mandamus) that the petition of candidate
Robinson was sufficient without the statement that he
"affiliated with the Republican party and supported its
nominees at the last regular election;" and that the re-
quirements of section 6, that such statement be made in
the petition, is unenforcible because violative of section
147, Constitution, which provides for and protects the
secrecy of the ballot.  In other words, it is the contention
of appellees that the secrecy of the ballot demanded by
section 147, Constitution, is not only a secrecy at the mo-
ment of voting, but for all time thereafter, and that a
voter, after voting, cannot be compelled to declare how
he voted.  It is true, as argued by counsel, that the effect
of our holding this single provision of section 6, uncon-
stitutional, would be to leave the primary election act in
other respects unimpaired; and likewise true, that the
question whether this provision is or not constitutional
was not raised in Montgomery v. Chelf or Hodge v.
Bryan, supra.  We are of opinion, however, that it was
in effect therein decided by the declaration that a pri-
mary election is not an election within the Constitution.

This self evident fact is persistently ignored in every
argument advanced against the constitutionality of sec-
tion 6 of the primary act.  In numerous cases relating to
regular elections held by constitutional authority, the
legality or result of which were in question, this court has
gone to the limit in protecting the secrecy of the ballot.
Commonwealth v. Barry, 98 Ky., 394; Mayor v. Barker,
99 Ky., 305; Banks v. Sargent, 104 Ky., 843; Nall v. Tins-
ley, 107 Ky., 441; Cole v. Nunnelly, 140 Ky., 138.  While
any attempt to compel the individual voter to disclose
how or for whom he voted at a regular election would not
be allowed, there is no prohibition against a voluntary
disclosure by him, unless it be made to affect the conduct
or result of a regular election.  But when a voter offers
himself, as did E. W. Robinson, as a candidate for nomi-
nation to an office at the hands of a political party with
which he claims membership, proposing to have his

claim to such nomination determined by the electors of the party at a primary election held under the primary election law of the state, he must submit himself to such reasonable regulations or tests as may be required of candidates by the law under which the primary election is held; and if one of these tests requires him to state, in order to get his name on his party's ballot, that he supported the nominees of the party, of which he seeks a nomination, at the last regular election, he must do so, and the disclosure, even if it should give the names of the persons for whom he voted, will not violate the provisions as to the secrecy of the ballot contained in section 147, Constitution. The tests to which the candidates are subjected by the primary election law of this state, are contained in section 6 of the Act. One of them is, that he must have affiliated with the party whose nomination he seeks, and also have supported its nominees at the last regular election. The words, "supported its nominees," do not necessarily mean that the candidate should have voted for such nominees. Without voting at all he may have given them actual and even active support, by advocating their claims, contributing to the legitimate expenses of their compaign, getting out the vote and in other proper ways, yet by accident or unavoidable casualty have been prevented from attending the election. Therefore to require one to say that he supported the nominees of his party at a former election would not necessarily compel the admission on his part that he voted for them; for this reason, if no other were apparent, it cannot be said that the test here imposed invades the secrecy of the ballot. In nearly all the states having a compulsory primary election law, this and similar tests have been held to be reasonable. Webber v. Felton, 77 Ohio St. Rep., 554; Ladd v. Holmes, 40 Or., 167; Morrow v. Whipf (S. D.), 115 N. W., 1121; State ex rel. McCarthy v. Moore, 87 Minn., 308; State ex rel Labaune v. Michel, 121 La., 374; State ex rel. McCue v. Balisdell (N. D.), 118 N. W., 141; State ex rel. McCue v. Berry (N. D.), 118 N. W., 150; Katz v. Fitzgerald, 152 California, 433.

It should be kept in mind that it is the secrecy of the ballot and not the secrecy of the party or of political belief that section 147, Constitution, is designed to protect. The State of Minnesota has a primary election law containing the provision that if a candidate, after permitting his name to go on the party ballot, suffers defeat in the primary, his name cannot be placed on the ballot as a

candidate, whether of another party or as independent, at the succeeding regular election. Notwithstanding the attack upon that provision of the Act the Supreme Court of that State in State ex rel. McCarthy v. Moore, supra, upheld its constitutionality and declared it a reasonable regulation.

In the opinion it is said:

"It is claimed for petitioner that this statute, in forbidding one who voluntarily becomes a candidate for a party nomination at the primary election and fails to secure it from having his name on the official ballot, interferes and materially impairs his eligibility for the office for which he failed to be nominated; and it is further claimed that every person who is eligible thereto has the right to be a candidate for an office whether he has already sought it as a party representative or not. This guarantee of the organic law relates to essential qualifications, and dispenses with any other test to hold office (as birth, education and the like) than the right to vote, and this, we apprehend is the extent of the guaranty. It is not attempted therein to provide regulations for voting, nor the details of the candidacy of the aspirant. The right to vote and the right to hold office are declared to be co-ordinate. The methods by which these rights shall be protected and enforced are, of necessity, left to legislative action; but we shall readily assume that it is an inherent right of citizenship that only such a system of regulation be provided for as will be just and reasonable and operate in its application to all voters and to candidates equally.   *   *   *   Of necessity there must be upon such a ballot a regular order in which the names shall be placed; and other features incident to the procedure that tend to create incidental advantages to one candidate over another; but it would seem proper that any candidate who seeks the assistance of a primary election law to aid him in securing party support should be bound by the application of good faith and the dictates of fair play to which he has voluntarily subjected himself. It is said by this law to a candidate 'if you prefer the advantages of a party nomination which is quite desirable you may seek it; but if the state prepares and prints your ballot and regulates nominations so as to secure the utmost freedom of choice among the members of your party, it does so upon the submission by you to the condition that if you are unsuccessful, it will not thereafter print your name upon the ballot to defeat your opponent;' and it

could not be said, because this is refused, that it is an unreasonable condition, but rather an imposition of even handed justice that would have been bestowed upon his previous contestant, had the result been otherwise." Miller v. Flaherty, 41 L. R. A. (N. S.), 132.

In Shostag v. Cator, 151 California, 604, in passing upon the constitutionality of a provision of the primary election law, which requires registraton before the elector votes, the Supreme Court of that state said:

"It is contended that the test prescribed by section 1366a is unreasonable, because, with the close of the registration, the elector loses his right to change his party allegiance in consequence of a change in political convictions, and is precluded from taking part in the election of delegates at the convention of the party with which on the day of the election his more matured opinions would impel him to cast his lot. This inconvenience certainly does result from the provisions of the act, but the Legislature, which must be presumed to have foreseen it, probably regarded such sudden conversions during the short interval between the close of registration and the date of the primary election as likely to be of such rare occurrences as not to justify the omission of a provision evidently designed to prevent unscrupulous and mercenary electors from holding themselves free down to the day of election to, vote with any party upon any corrupt motive, for the purpose of influencing the nomination if its candidates for public office, while without any interest in their success, and perhaps with an interest in their defeat. If it shall sometimes happen that a conscientious voter is converted from one political faith to another between the close of registration and the primary election, he may console himself for the loss of his vote by the reflection that his loss is trifling in comparison to his share of the advantage to the state of which he is a citizen flowing from a measure which tends to prevent a grave abuse, especially in those centers of population where the Primary Election Law is made obligatory."

In Ladd v. Holmes, supra, the court in discussing the right of the Legislature to prescribe an additional test for, those who participate in the primary election, used this language:

"The act is none the less valid because it provides for a party election, or, to speak more precisely, elections had at party primaries. All electors or parties author-

ized or required to hold such elections are entitled to vote at their respective party primaries and not elsewhere. It is not true that every citizen accorded the elective franchise under the Constitution is entitled to vote at all elections.  *  .  *  *  So it is where party primary elections are held, such as are authorized and required by law, and under the supervision and inspection of public functionaries; it is not a violation of the Constitution that all electors are not permitted to vote at a particular party election. Electors of one party have no desire, unless prompted by sinister or evil motives, nor have they any inherent right, within or without the Constitution, to vote at some other party primary or election; hence no right or privilege of which they can complain has been entrenched upon or violated. We see no objection to the Legislature providing for party elections, and limiting the electoral privilege to party members. The exclusion of other party members from participating in such elections is not an infringement or denial of a constitutional right or privilege."

The Supreme Court of Nebraska in State v. Drexel, 74 Neb., 776, in its consideration of the primary election law of that state, indulged in the following pertinent language.

"By section 19 of the Act the right of an elector to vote at a primary is made to depend upon his political affiliation with the party for whose candidates he desires to cast a ballot. It is therein provided that no person shall 'be entitled to vote at such primary election until he shall have first stated to the judges of said primary election what political party he affiliated with, and whose candidates he supported at the last election, and whose candidates he intends to support at the next election.' Provisions are also made for challenging any person offering to vote at such primary election, and for his making oath to the truth of the statements above required as to party affiliation, and his support of candidates of the party with whom he is offering to vote. It is difficult to perceive any valid objection to provisions of this character, when applied to a Primary Election Law.. These laws replace party nominating conventions. The regulation of the membership of the party and of the right to participate in the nomnation of its candidates, in this respect, is taken from the party and placed in the control of the Legislature. The integrity of the party and the success of its principles and policies can be best maintained

by the participation in its affairs of those only who are at heart in sympathy with the objects and ends to be attained by the organization, and loyal to its tenets. An indiscriminate right to vote at a primary would tend, in many instances, to thwart the purposes of the organization and destroy the party. A hindrance to one, not a member of a party, from participating in the selection of the party's delegates and candidates can in no proper sense be said to interfere with the free exercise of the elective franchise as guaranteed by the Constitution. All that is required is that the party offering to vote at the primary, in order to be entitled to vote with either of the parties engaged in nominating candidates thereat, shall have affiliated with such party, supported its candidates generally at the last election, and intend to do so at the next. Open declaration of allegiance to party is absolutely essential to the proper working of any primary law.''

In Ex Parte Wilson, decided July 18, 1912, 125 Pacific Reporter, 739, the Supreme Court of Oklahoma in the opinion delivered therein said:

"It is alleged that the elector named in the opinion was a duly qualified and registered elector of the precinct named, but did not register as a Democrat. * * * The propositions presented are, first, whether or not a qualified elector, who is not a member of any political party having official ballots at a general primary election, is entitled to vote at such a primary election. Second, whether or not an elector may vote the ballot of any party he chooses to select whether he is a member of that party or not. Upon careful consideration, we are of opinion that the constitutional provisions contemplated that only electors who are members of political parties shall participate in the primary election for the selection of candidates for the respective parties, and then vote only the ballot of the party of which they are a member, and that non-partisan electors having no party affiliations are relegated to their right to participate in the nomination of candidates for elective office by petition in the manner provided for by the Primary Election Law. A few plain and unquestionable propositions will sufficiently present the views of this court in support of this position.

Political parties are voluntary associations of electors, having an organization and committee, and having distinctive opinions on some or all of the leading politi-

cal questions of controversy in the state, and attempting through their organization to elect officers of their own party faith and make their political principles the policy of the government. They are governed by their own usages and establish their own rules.

No one with any knowledge of the history of our country will contend for a moment that political parties have not played an important part in shaping the destinies of our government; nor that they were not a powerful and necessary force in a successful administration of the affairs of the national and state governments. So potent have they become in determining the measures and administering the affairs of government, that they are now regarded as inseparable, if not essential to, a republican form of government.  *  *  *  The object of holding a primary election by a political party is to select party candidates, and it is too plain for argument that no voter should be permitted to vote at a primary election of a political party, unless he is a member of such a party; and unless provision is made to prevent persons voting at a primary election for the candidates of a party who are not affiliated with such party, the whole scheme of nominating party candidates by a primary election would fail, because of being incapable of execution.  *  *  *

"A primary election is one for the nomination of candidates for office of the respective political parties by the members thereof. If Republicans vote the Democratic party ballot, and Democrats vote the Republican party ballot, a Socialist vote any ballot but their own, then nomination so made cannot be said to be party nomination. It needs no argument for the position that to permit electors participating in a primary election to vote indiscriminately any party ballot they might choose to select, regardless of their party affiliations, would be simply putting a premium upon deceit, dishonesty and fraud, and would make it possible for the worst elements of the several political parties participating to direct and control their nominations. Obviously all of the provisions of the primary election law were enacted by the Legislature to prevent electors from voting any ballot except that of their respective parties, and thereby prevent fraud and preserve the purity of the ballot. The constitutional provision of the primary election law provides only for party elections.

No specific provision is made by the primary law for testing the qualifications of an elector as to his party affiliation. The inquiry is, by the general election law, confined to the qualifications enumerated, in which this is not included. Under the foregoing provision, when an elector demands a party ballot, if the election inspector, judge, or party watcher knows or has reasons to believe that the elector offering to vote is a non-partisan or not a member of the party whose ballot he is attempting to vote it is the duty of such election officer to challenge the right of such elector to vote.   *   *   *   If the challenge be on the ground that the elector is not, in good faith, a member of the party whose ticket he is attempting to vote, the duty of the inspector is the same as upon a challenge as to any other qualification. An elector who resists the challenge and makes oath that he possesses the qualification contemplated by the Constitution should bear in mind that the usual test is, did the elector vote the party ticket at the last preceding general election? Another rule of party membership is: an elector who affiliates with the party and stands by his party organization, and as such member yields obedience to party rules and usages and accepts and supports the regular party nominations.   *   *   *   Here, in the absence of a statutory test of the party qualifications of electors at a primary election, the rules and usages of the respective political parties having official ballots to be voted at such primary election must control."

All that is said by the authorities, supra, as to tests of party loyalty and party membership, applies with equal force to electors voting and candidates voted for in primary elections; and whether applied by legislative enactment to the one class or the other, or both, they are equally reasonable. It is to be remarked that the object of the present primary election law is, to purify the politics of the state by preventing frauds and wrong doing in making nominations; and it will be in the interest of political parties and the welfare of all the citizens of the state to effectuate the salutary purpose designed by its enactment. Indeed, no political organization can be effective that does not command public confidence and respect; therefore, the integrity of all party nominations should be so manifest as to put them above being called in question. That the act manifests little concern for the independent voter is because of his resentment of party restraint and disavowal of party allegiance. It, how-

ever, neither discredits his citizenship nor interferes with his rights, but leaves him free to support, at regular elections, the nominees of one of the political parties, or to vote for candidates without nominations. Moreover, the independent candidate can by petition, as provided by section 1453, Kentucky Statutes, get his name on the ballot at a regular election under a device other than that of a party designated by the petitition. That the act is in some respects in need of amendment, a cursory reading of it will demonstrate, but it cannot fairly be said of any of its provisions with respect to the qualifications it requres of those who would participate in or be nominated at the elections held thereunder, that they are unreasonable, or obnoxious to any provisions of the State's Constitution. Applying its provisions to the case in hand we find that the elector's petition which appellees, Turner and others, tendered appellant in aid of that of the candidate, Robinson, to get his name on the Republican primary ballot, though sufficient in form and substance, was properly rejected by appellant, because of the insufficiency of that of the candidate, which failed to state that he "affiliated with the Republican party and supported its nominees at the last regular election." But because of our want of jurisdiction of the appeal prosecuted by appellant in the action brought by Robinson, the candidate, we cannot direct that the name of the latter be not printed on the ballot as was directed by the circuit court; but the judgment rendered by that court which directed appellant to receive and file the petition of the appellees, Turner and others, is reversed and cause remanded, with direction to the circuit court to dismiss their petition. The appeal prosecuted by appellant from the judgment rendered in the action brought against him by the candidate, Robinson, is hereby dismissed.

Whole court sitting, except Judge Nunn, whose illness compels his absence.