## Hibbard v. Page.

(Decided October 1, 1929.)

E. N. INGRAM for appellant.

N. R. PATTERSON for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellant and appellee were candidates for justice of the peace in the First magisterial district in Bell county at the recent Republican primary election. Page was awarded the certificate of election, and was allowed to retain it by the judgment of the trial court. As certified by the election officers, Page received 642 votes and Hibbard 545. Hibbard contested, charging a violation of the provisions of section 1565b11, Ky. Stats. There is no other issue. Hibbard charges that Page used money in the election for the purpose of influencing voters, and that the provisions of the law were violated by Page and by others in his behalf with his knowledge. The evidence is all directed at transactions and incidents at Four Mile precinct on the day of the primary. There is much evidence, direct and inferential, that appellee was present at the voting place in that precinct, and that he used money for the purpose of inducing persons to cast their votes for him. He denies every wrongful act testified about by witnesses for appellant touching himself and his friends engaged in working in his behalf on that day. They also deny that they were guilty of using money to influence the result of the election. The explanation offered of the conduct of appellee and some of his friends is not very satisfactory.

Mollie Brock and her sister testified that appellee said to them just before the election that he had money

and that he was going to be their next magistrate and he wanted them to vote for him. James Dixon testified that appellee told him on the day of the primary that Four Mile precinct had cost him $200. William Parton and James Mink testified that they saw appellee give Floyd Acuff a roll of money on the day of the primary election at Four Mile voting place, and that Acuff, one of the workers for appellee, took voters behind a house and talked to them. One of these witnesses saw Acuff talk to two voters immediately after receiving the money, and when they went into the polling place he went to the window and attracted the attention of George Shalton, the clerk of the election and a worker for appellee, who came to the window and had some conversation with them. Maude Champlin and her mother-in-law, Cora Champlin, testified that appellee offered to pay them $3 each for their votes. Bell Ferrell, Maude Brackett, Nettie Sizemore, and Rosie France heard Roy Elliott, a worker for appellee, offer Maude and Mary Brackett $9 for their votes. Maude Brackett testified that appellee offered them $3 each for their votes in the presence of Elliott. These two women voted and started away from the polls, when Roy Elliott followed them and gave them $3 each. They also received $3 from some one else, making a total of $9. Appellee and his witnesses explain this transaction by saying that they were making up money to help these women who were in straitened circumstances. It was an inopportune time and place to make up money for such purpose. Martha Hardy testified that appellee offered her $6 for the votes of herself and her husband, and she heard him offer some men $4 each for their votes. She did not accept his offer. An old negro named Crump testified that appellee promised him a piece of money if he would vote for him. He wanted the money first, but appellee insisted on having the vote first. After the vote was cast the old colored man demanded his piece of money, but was advised that he could not get it because he did not vote for appellee. It was reported by Acuff that George Shalton had reported that the vote was not cast openly on the table, as were a large majority of the votes in the precinct on that day. George Shalton, the clerk of the election, was an active supporter of appellee. The night before the election, so it was testified, he went to the home of Perry Elliott and aroused him and his family from sleep and offered cash for their votes and insisted that they fix the price. Bill France

testified that appellee gave Roy Elliott and Levi Henson money on the election grounds, and offered him $5 for his vote. The giving of the money to Henson is explained by appellee by saying that Henson was making up money for a second nine baseball team, and that he gave him a donation to buy a baseball.

As said above, the appellee denies all of these things, and while he appears to be a man of good standing in his neighborhood, we find too much evidence which connects him and others with his knowledge with the illegal expenditure of money to overlook it. No man should be allowed to enjoy the fruits of his victory if that victory is obtained through a violation of the laws enacted for the purpose of maintaining the purity of the ballot. Section 1565b11, Ky. Stats., is as follows: "In any contest over the nomination or election of any officer mentioned in this act, it may be alleged in the pleadings that the provisions of this act have been violated by the candidate or by others in his behalf with his knowledge, and if it so appears upon the trial of said contest, then said nomination or election shall be declared void, and it is hereby provided that the candidate who has received the next highest number of votes and who has not violated the provisions of this act shall be declared nominated or elected unless it also appears that one of the parties to the contest received a plurality of the votes cast and did not violate the provisions of this act."

The proper construction of this section was before the court in the case of McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581. But the opinion in that case deals with a final election. This court there held that under the Constitution elections in this state are required to be determined by the plurality vote of the people, and that a candidate not so receiving a plurality of the votes cast in the election cannot be declared elected, and for that reason the court held that the provision of this section to the effect that one not receiving a plurality of the votes in a final election might be declared elected was unconstitutional. This court, however, has held that a primary election is not an election within the meaning of the Constitution, and that the Legislature may provide reasonable regulations for the nomination of party candidates. Hager, Clerk, v. Robinson, 154 Ky. 489, 157 S. W. 1138. The General Assembly had the power to prescribe rules and regulations governing party primary elections, and it was within its power to say that the can-

didate for a nomination receiving less than a plurality of the votes might be declared the nominee if the one receiving a plurality had violated the provisions of the law. Mellon v. Goble, 210 Ky. 711, 276 S. W. 830. By the provisions of section 1565b3 it is made unlawful for any person who is a candidate for a nomination or election for any state, county, city, town, municipal, or district office to expend, pay, promise, loan, or become pecuniarily liable in any way for money or other thing of value, either directly or indirectly, to induce a person to vote for or support him.

In the case of Duff v. Salyers, 220 Ky. 546, 295 S. W. 871, 872, this court said: "The choice of the people at an election may not be lightly set aside. Guilt under the Corrupt Practice Act must be proved by competent evidence. It may be shown by circumstantial evidence, but, to be sufficient for this purpose, the inference from the circumstances must be sufficiently certain to satisfy the ordinary judgment." That is a correct statement of the rule; but it must be equally sound that, when there is proof that the provisions of the act have been violated, the court should not lightly ignore the proof upon the evidence of those who are charged with having violated the law. The evidence in this case is sufficient, in our judgment, to show that the law was violated by appellee, and by others working for him with his knowledge. The duty of the court, therefore, is clear. He should be denied the fruits of his victory thus obtained.

It is neither alleged nor proven that appellant violated the law. There is evidence that he had been instrumental in procuring allowances by the fiscal court to some of the voters who testified in this case. Bell county appears to have a species of the "dole system," and where it appears that one of its citizens' needs could not otherwise be provided for, the fiscal court, upon the recommendation of a physician, makes an allowance. The practice is probably illegal, but the proof that these witnesses received the dole went to their credibility. They are the sort of voters that an election worker would probably seek out to influence by the expenditure of money. The crime is the more heinous if advantage was taken of their poverty. The lower court should have determined that appellant was the Republican nominee for justice of the peace in the First magisterial district in Bell county.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.