# Carter v. Lambert.

Oct. 10, 1941.

As Modified and Extended on Denial of Rehearing Oct. 10, 1941.

Fritz Krueger for appellant.

E. R. Denney and A. E. Funk for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellant, Chas. C. Carter, and the appellee, J. H. Lambert, were candidates for the Republican nomination for county judge of Rockcastle County at the primary election in August, 1941. The appellee received 1,596 votes, the appellant 1,305 votes and a third candi-

date 653 votes. Appellant filed this contest alleging that the appellee had violated the Corrupt Practice Act, Kentucky Statutes, Section 1565b-1 et seq., in a number of different ways. The third candidate filed a petition to be made a party which he made a counterclaim against both appellant and appellee alleging violations of the Corrupt Practice Act on the part of both of them praying that he be adjudged the nominee. Proof was introduced only by the appellant and on final submission the trial court adjudged that the appellee, Lambert, was the duly elected nominee and dismissed appellant's petition. This appeal follows.

While a greater portion of the evidence was devoted to establishing certain other grounds of contests set up by appellant, we have concluded that the fourth ground alleged, namely, that the appellee illegally expended money at the polls on election day was fully sustained by the evidence and warranted the trial court in rendering judgment in appellant's behalf. It therefore becomes unnecessary to discuss any of the other grounds relied upon.

At one of the voting places, where the appellee was present throughout the day, several witnesses testified that they saw appellee walk down under the hill from the voting place with a voter, Houston Lovett, who had just voted over the table for appellee, and near a tree under the hill hand him some money. Lovett, called as a witness, admitted that he had voted over the table for appellee and that at the time referred to by the witnesses appellee handed him $2 but said that the money was given to him to pay a girl to stay with his wife while he went to the election, his wife being a cripple. He said appellee stated to him, ''I promised your wife to pay a girl to stay with her until you got back.'' This witness testified, however, that no girl stayed with his wife while he went to the election. He further testified that on some occasions when he went away from home he employed a girl to stay with his wife but the most ever paid for this service was $1 and the usual and customary amount paid was 50c. The appellee was called as a witness on cross-examination and admitted that he was present at the voting precinct and had with him about $35, the principal part of which was in one dollar bills, all of which he expended that day except $11. Most of it, he said, was given to people to buy gas to haul in

voters. He named several persons to whom payments of this character were made. As to the $2 paid to Lovett he stated that some days before the election he had told Lovett's wife that he would send money to pay a girl for staying with her while her husband went to the election and that the $2 was paid pursuant to this conversation. It may be noted that in appellee's post election expense account no mention is made of any of these sums admitted to have been expended by him on election day. His post election expense account shows the expenditure of no money on election day, August 2, the last item on the account being August 1 for transportation of persons to polling places in the amount of $85, no itemization of this sum being made.

It is manifest that the evidence shows a clear violation of the Corrupt Practice Act by the appellee. The payment of the $2 to Lovett in the circumstances must necessarily be considered as a payment made to him in consideration of the illegal vote just cast by Lovett over the table for appellee. Assuming the truth of appellee's statement (and it is a strain on one's credulity to indulge this assumption) the expenditure was clearly not a justifiable one within the intent and purpose of the act. The amount paid was clearly beyond a reasonable amount to compensate a girl for staying with Mrs. Lovett while her husband went to vote and, as a matter of fact, as heretofore pointed out, no girl was thus actually employed. Were we to place the seal of approval on such excuses as this offered to justify the payment of money to voters at the polls, it would be next to impossible to say that any candidate had been guilty of the illegal expenditure of money in violation of the Corrupt Practice Act—an equally plausible excuse could be offered as to money paid any voter. While we have frequently held that candidates may employ workers on election day, provided the amounts paid to them are reasonable and it is clear that the sums thus paid were not compensation for their votes, we have nevertheless held that when such practices indicate that money is paid to workers under the guise of employing them to work on election day when, as a matter of fact, it is paid for their votes, such practices fall under the condemnation of the Corrupt Practice Act. Asher v. Broughton, 231 Ky. 165, 21 S. W. (2d) 260; Van Meter v. Burns, 176 Ky. 153, 195 S. W. 470. We have further held also that the

bribery of one vote is sufficient to void the nomination of a successful candidate. Combs v. Brock, 240 Ky. 269, 42 S. W. (2d) 323. Here, it is clear that the $2 paid to Lovett after he had voted over the table for appellee was actually paid as compensation for his vote and not as compensation to a girl for staying with his wife. This being true, under the decided cases we have no recourse except to adjudge that appellee was guilty of such a violation of the Corrupt Practice Act as to render his nomination void.

However, this leaves pending and undisposed of appellee's counterclaim asserting violation of the Corrupt Practice Act by appellant. No action was taken on this counterclaim by the trial court since the judgment apparently obviated the necessity therefor. In these circumstances we think it was not incumbent on the appellee to introduce evidence to establish that appellant was guilty of corrupt practices. While an election contest is tried by the Court, it is not, strictly speaking, an equitable action in which correct practice requires that all evidence on both sides should be in before the chancellor renders judgment and where the defendant acts at the peril of having the judgment reversed on appeal without a consideration of his evidence if he introduced none or fails to offer it. It is true that judgment was rendered for appellee on his motion at the conclusion of appellant's evidence and that he made no offer of evidence, but nevertheless he should in the circumstances be permitted the opportunity on the return of the case to establish that appellant is also disqualified for violation of the Corrupt Practice Act. The third candidate offered no evidence at any time in connection with his petition to be made a party and his counterclaim contained therein. In fact, no order was entered making him a party and no appeal was prayed by him. This course eliminates him from the litigation and leaves the only question to be determined, that of corrupt practices by appellant.

Judgment reversed for further proceedings consistent with this opinion.