## Davisworth v. Middleton.

Oct. 24, 1941.

78

Golden & Lay, Carter & Hogg and E. C. O'Rear for appellant.

C. B. Spicer, E. H. Johnson, Fred Jones and Morris & Rider for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

Theodore Middleton contests the nomination of Lonnie M. Davisworth as Republican candidate for county judge of Harlan County. The returns were 3,512 votes for the contestee and 2,990 for the contestant, a plurality of 522 for Davisworth. Three other candidates who received fewer votes are not parties to the contest. Davisworth counterclaimed, charging the contestant with having violated the Corrupt Practice Act. Kentucky Statutes, Section 1565b-1 et seq. The Circuit Court, Honorable J. J. Tye presiding as special judge, adjudged Davisworth guilty of having violated the Corrupt Practice Act and directed that his certificate and nomination be cancelled. He further adjudged that Middleton was not guilty and should have the nomination. Davisworth appeals, contending that the court erred in cancelling his nomination, and, if that contention be not sustained, that the judgment awarding the certificate to his opponent should be reversed.

Appellee has filed a motion to dismiss the appeal because the appellant was not diligent in having the record prepared and filed in the time prescribed by Section 1550-28 of the Statutes, as construed by this court. Uncontradicted affidavits supplementing the original record show that after an extended trial in which evidence was heard orally by the court, the judgment was entered and signed in the afternoon of September 24th. The appellant executed a supersedeas bond the next day, as is re-

quired by the statute, and he in person and also one of his attorneys requested the official stenographer that day to start work on the transcript of the evidence. The stenographer began transcribing her notes on the 26th, and with two assistants worked day and night and on Sunday to finish it. During this time the appellant and his lawyers were continually hurrying her. The transcript was completed on October 8th and immediately filed and approved by the Judge. Meanwhile, on October 2d, a schedule had been entered directing the clerk to prepare the record of the orders and the original pleadings for filing, as is permitted on an appeal of an election contest. It was ready when the stenographer's transcript was approved. The next day after the transcript was filed, October 9th, the entire record was filed in this court.

For the expedition of the appeal, Section 1550-28 of the Statutes requires that "immediately" after the execution of the supersedeas bond the circuit clerk shall transmit to the clerk of the Court of Appeals the original papers, "including such transcript of evidence as may be furnished or as may be required by the court or by the parties." In Austin v. Anderson, 279 Ky. 742, 132 S. W. (2d) 56, we construed "immediately" to mean "without unnecessary delay or as soon as practicable, or with due diligence under the circumstances of the particular case." Since the legislature specifically provided for the filing of the record on appeal of a recount judgment within ten days, upon analogy we treated that as a reasonable period. As the record in that case had been filed within that time, the motion to dismiss the appeal was overruled. In its provision for filing the record in a contest case (to be distinguished from a strictly recount proceeding) the statute leaves the matter of time open and does not provide for an extension of time by order of the court as in the case of a bill of exceptions. This emphasizes the relative nature of the word "immediately" construed as "soon as practicable." The expression in Austin v. Anderson, supra, contemplated a case in which the record could be and was prepared within ten days. Here it was not possible to complete this much larger record within ten days, and we think it was prepared and filed as soon as practicable in the exercise of due diligence; therefore, the motion to dismiss the appeal is overruled.

The record discloses that the primary election in Harlan County last August was a saturnalia of corruption and crime. It reeks with confessions of ballot box stuffing and confessions of buying and selling votes for money and whisky. There is substantial evidence of chain ballot voting. The greater part of the evidence of bribery related to the buying of votes for Mrs. Herbert Cawood, a candidate for sheriff. In most instances the appellant, Davisworth, was linked with her candidacy. Not much less is the evidence concerning the buying of votes for the appellee, Middleton, and those slated with him. The chain voting was in his behalf. Both of these parties denied they authorized or knew of any violation of the law in their behalf. Each categorically denied the particular instances in which it had been testified he had personally bought votes or had given the money directly to the purchaser for passing on to the seller. It was not only proved that the witnesses against them were of bad reputation but their own testimony of selling and buying votes classifies them as disreputable. There were some bystanders who saw what was going on, although some of them are impeached. Another class of witnesses are those who testified that Davisworth had furnished them with sums of money for the purpose of buying votes, though in some instances their testimony is not very convincing, particularly when set over against the contradictions and circumstances; yet it was enough to warrant the conclusion of personal guilt. One violation alone is sufficient to deprive a successful candidate of his election. Carter v. Lambert, 288 Ky. 39, 155 S. W. (2d) 38.

The United Mine Workers of the district embracing Harlan County, by a resolution, proclaimed by newspaper advertisement, endorsed the candidacy of Mrs. Cawood for sheriff, and most, if not all the local unions, by resolutions, endorsed Davisworth for county judge. Many field workers of the Union were active in the election and bought votes for both of these candidates jointly. In a few instances another candidate for county judge was linked with Mrs. Cawood, but the greater number were slated with Davisworth. The relation of Davisworth to the Union was so close and the activities of its agents in his behalf were so great and brazen that it is incompatible with reason to say that he did not have knowledge of what was to be done and what was

done in his behalf; hence, he is chargeable with their conduct.  Section 1565b-11, Statutes.

In the city of Cumberland, where Davisworth lived, there was an organization headed by Mayor L. E. Creech.  They unanimously agreed to support Mrs. Cawood for sheriff, but in the judge's race the members seem to have been left to their own choice.  Some of them supported Theodore Middleton and others Ben Middleton for county judge; but the greater number supported Lonnie Davisworth.  James A. Cawood, the county school superintendent, brought $2,000 in one dollar bills to the headquarters of the organization in Creech's store and residence.  Davisworth testified that he had tried to get the organization to support him.  He had no money but had a great deal of ''lip,'' and admitted that he did a good deal of ''bluff talking'' as to how much money he would put up.  He denied putting up money because he had none, and that seems to be true.  He knew about the fund and what was going on in the organization.  When it was calculated that $2,000 was not enough and that $2,800 would be needed for the four precincts in Cumberland, Davisworth tendered a promissory note for that sum payable to James Cawood, but it was not accepted.  This is according to his own testimony.  A call to the office of the sheriff, who was the husband of Mrs. Cawood, produced the additional amount forthwith.  Various sums from $5 to $25 were put in envelopes and distributed among the workers in Cumberland.  The appellant was the beneficiary of the bribery for which purposes the money was used.  Appellant's admission of his willingness and anxiousness to get in on the spoils and his relationship to the vicious enterprise stamp him with a mark of guilty knowledge and imputation of guilt.

On the counterclaim against Middleton, we are persuaded that some of the men who testified to having received money from Davisworth and bought votes for him had actually done that very thing for his opponent Middleton in whose behalf they were testifying.  That is certainly so as to Clyde Osborne of Wallins.  In one precinct in that town there was open buying of votes by Osborne and others for George Saylor, a candidate for magistrate, and Theodore Middleton jointly.  Also some chain voting of which Middleton was the beneficiary.  During much of the day Middleton was on the grounds

conferring with Osborne and others. They made their headquarters and conducted their hidden activities in Saylor's wholesale beer establishment across the street from the polls. When a fight followed the seizure of a chain ballot by a candidate for magistrate opposed to Saylor, and the participants had been arrested and carried to Harlan, Middleton promptly went to their rescue and brought them back. Several witnesses testified that Middleton personally bought their votes. Their disreputable character and the circumstances they describe in some instances make their testimony too doubtful for acceptance as proof in and of itself. Middleton is too experienced a politician and participant in election contests and too shrewd to have so publicly operated. But the testimony in one or two instances leaves the impression of veracity.

There was some sort of colored women's organization in Lynch, of which the wife of preacher Holmes was the head, and the members of which used money quite freely in Middleton's behalf. He admits having attended a gathering at Holmes' residence on Thursday or Friday night before the election, where there was much beer, soft drinks, sandwiches and hilarity. It is disputed whether there was a liberal quantity of whisky. Middleton says the meeting was opened with a spiritual song and prayer, but other witnesses describe it as anything but a religious service. The party certainly had his "blessing" and adjourned with his "benediction." After that meeting, on the same night, there was another gathering of a similar character at Wyatt's boarding house. We are persuaded that Middleton contributed to the expense of the Holmes' party and that out of that meeting poured a stream of unlawful activity in his behalf by the members of the women's club.

While the evidence as to Middleton's guilt of violating the Corrupt Practice Act is not as clear as Davisworth's guilt, but as in his case the volume of illegal activity and the amount of money used is so great that he could not have but known what was to be done or have escaped knowledge of what was being done in his behalf. The case is not one of those where there were a few isolated or sporadic instances, the circumstances of which did not establish a guilty knowledge on the part of the beneficiary, as is mentioned in Howard v. Whittaker, 250 Ky. 836, 64 S. W. (2d) 173. Here there was

much evidence of the candidate's association with those who actually and directly corrupted the election and his prominent place in the picture is such that he is chargeable with enough to establish his guilt in some of the many instances described. Hibbard v. Page, 230 Ky. 638, 20 S. W. (2d) 475; Howard v. Whittaker, supra.

We have not failed to take notice of the intimidation and influencing of witnesses during the trial of this case. Some of them retracted and reversed their testimony. The contemptuous activity appears to have been by representatives of both parties.

We are of opinion that the guilt of both of these candidates was established and that neither is entitled to receive the nomination he sought. Other candidates for the office are not parties to the proceeding and waived whatever rights they may have had. Thus there is a vacancy in the nomination. Leabow v. Jones, 221 Ky. 509, 299 S. W. 177.

The judgment cancelling the nomination of the appellant is affirmed. In so far as it directed the award of certificate to the appellee Middleton it is reversed.

Whole Court sitting.