**T. S. SILER, Appellant,**

v.

**Harry BALL, Appellee.**

Court of Appeals of Kentucky.

Oct. 17, 1961.

———◆———

Hubert F. White, Middlesboro, Clore & Swinford, Pineville, for appellant.

James S. Wilson, Pineville, Glenn W. Denham, Middlesboro, for appellee.

CULLEN, Commissioner.

In the May 1961 primary election in Bell County the election returns showed that T. S. Siler was the winner in the race for the Republican nomination for the office of sheriff. Harry Ball, who received the next highest number of votes brought a contest action charging Siler with having violated the Corrupt Practices Act. KRS Ch. 123. Siler filed a counterclaim asserting that Ball had himself violated the Act. The court found that Siler had violated the Act, and Ball had not, and entered judgment declaring that Ball was the lawful nominee. Siler has appealed.

The circuit court found that Siler had purchased votes in violation of KRS 123.-040, in the Noetown Precinct. Several men testified that Siler gave them $2 each at the voting place to "work for him," and Siler admitted on the trial that he had done this. However, some of these men did not perform the work for which ostensibly they were hired, and others merely engaged in some perfunctory activity of an indefinite duration in handing out some cards to voters. One man, as he left the polling place after having voted, was given $2 by Siler, who said, "This pays you for your time," and admittedly this man did not even make a pretense of performing any work for Siler. Two of the men had given affidavits before the trial that Siler had paid them to vote for him, and when cross-examined concerning these affidavits their attempts at explanation were feeble, one saying that he originally had understood that the money was paid to him for his vote "but I could have understood it wrong," and the other saying that Siler's statement to him, as related in his affidavit, that Siler "would fix him up" when he came out of the polls, meant that "it was for working." At least one of the men who was paid money was a complete stranger to Siler.

The foregoing evidence, together with other testimony as to Siler's activities around the Noetown Precinct on the day of election, such as his going a number of times behind the building in which the voting booths were located and handing money to various persons, some of whom then went in to vote, was in our opinion sufficient to sustain the trial judge's finding that Siler had engaged in illegal vote buy-

ing. The judge was justified in concluding that the money was paid for votes under the mere guise or subterfuge of employment to perform work at the polls. See Carter v. Lambert, 288 Ky. 39, 155 S.W.2d 38.

In regard to the claim that Ball himself had violated the Act there was testimony of four witnesses that Ball had paid them money with the request that they vote for him. Ball categorically denied this, and produced some documentary evidence which tended to refute the story of one of these witnesses. Two of the witnesses were known workers for Siler and had Siler's stickers on their cars at the time Ball was claimed to have approached them. Another was a registered Democrat who was not eligible to vote in the Republican primary. Aside from the features of implausibility in the testimony of these witnesses there is the fact that Ball flatly denied having paid them any money. There is no ground upon which we could say that the trial judge was required to accept the testimony of the accusing witnesses over that of Ball.

The judgment is affirmed.