# Gardner v. P. S. Ray, Clerk.

(Decided June 20, 1913.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

## Ewald v. Same.

Appeal from Second Division.

## Tyler, et al. v. Same.

Appeal from Third Division.

## Johnson, et al. v. Same.

Appeal from Fourth Division.

1. Elections—Primary Elections—Requirements of One Becoming a Candidate in.—One who files his petition to become a candidate for a party nomination in the State primary election must, as required by section 6 of the primary election act in order to get his. name on the party ballot, state therein 1, that he is a qualified elector; (i. e. of the party whose nomination he seeks) 2, that he is a member of such party; 3, that he affiliated with such party and supported its nominees at the last regular election.

2. Elections—Primary Elections—"Qualified Elector"—Definition of. —In a municipality where registration obtains, both registration and declaration of party affiliation are required by section 19 of the act, to qualify voters to participate in primary elections. The qualifications of electors being defined by· section 19, that definition must be applied to the term "qualified elector" in sectoin 6.

3. Elections—Primary Elections—Constitutionality of Act Providing for.—The act is not repugnant to the Fourteenth Amendment to the Constitution of the United States, as it does not abridge any privileges or immunity of a citizen of the United States. The privileges and immunities therein protected are those which arise out of the nature and essential character of the national government, the National Constitution, the National treaties, or the acts of Congress, as distinguished from those belonging to the citizens of the State.

4. Elections—Primary Elections—Constitutionality of Act Providing for—Province of Legislature.—In enacting the present primary election law the Legislature did not, in so far as the objections made to its constitutionality in these two cases are concerned, transcend its powers, the question as raised being wholly political and relating wholly to the manner in which the Legislature exercised its power, are matters with respect to which the Legislature was more competent to decide than are the courts.

PERCY N. BOOTH, ALEX. G. BARRETT, JOHN B. BASKIN, R. A. McDOWELL and WILLIAM KRIEGER for appellants.

A. SCOTT BULLITT, J. L. SULLIVAN and M. M. LOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Dismissing Appeals in First Two Cases and Affirming Judgments in Second Two Cases.

The above four appeals have been considered together, but the judgment in Charles T. Gardner v. P. S. Ray, and that in George R. Ewald v. P. S. Ray, section 27 of the Primary Election Law deprives us of the jurisdiction to review. That section was so construed by us in the cases of Paul C. Hager v. E. W. Robinson, and Paul C. Hager v. James W. Turner, &c., this day decided; and as the one opinion in those two cases fully presents the reasons for such construction, it is deemed unnecessary to repeat them here. The two appeals referred to are therefore dismissd. But for the further reasons expressed in the opinion in the Hager cases, *supra,* we have jurisdiction of the two remaining appeals, W. S. Tyler, &c. v. P. S. Ray and Carl C. Johnson v. P. S. Ray, and consideration of the questions raised by these appeals convinces us that the action of the circuit court in sustaining a demurrer to each of the petitions was not error. These two cases, and those of Charles T. Gardner v. P. S. Ray and George R. Ewald v. P. S. Ray were heard together by the four judges of the Common Pleas Branch of the Jefferson Circuit Court. Like the Hager cases, they attack the constitutionality of the present Primary Election Law, urging the same and additional grounds against its validity. We find in the record an admirably written opinion upon the questions presented and decided, in which the four circuit judges, who tried the cases, concurred. Though expressing the views entertained by them relative to all the cases they were considering, it is applicable to the only two of the cases before us on appeal, viz: W. S. Tyler, &c. v. P. S. Ray; Carl J. Johnson, &c. v. P. S. Ray. We have adopted and here insert, so much of the opinion as we find in accord with the conclusions we have reached. It is as follows:

"In each petition a writ of mandamus is asked against the clerk of the Jefferson County Court to compel him to act according to plaintiffs construction of cer-

tain provisions of the Act of March 5, 1912, providing for nominations by the leading political parties of their candidates for office at primary elections. Chares T. Gardner, desiring to become a candidate at the primary election to be held under the Act mentioned on August 2, 1913, for the nomination of the Progressive Party for Representative from the Forty-fourth Legislative District, tendered to the clerk of the Jefferson County Court, as required by the Act, his petition, supported by the requisite nominating papers, asking that his name be placed upon the nominating ballots of that party. The clerk declined to file the petition, on the ground that it showed that Gardner was not qualified under the terms of the Act to become a candidate at the primary election of the Progressive Party. The petition contains the following statement:

"I am a member of the Progressive political party and affiliated with it and supported its nominees at the last regular election, which was on November 5, 1912. On the ............ day of October, 1912, at the registration next preceding said election, I was fully registered as affiliating with the Democratic party."

George R. Ewald tendered to the county clerk his petition to have his name printed on the ballots of the Progressive party as a candidate for that party's nomination for Representative from the Forty-sixth Legislative District. For reasons similar to those which led him to reject Gardner's petition, the county clerk declined to file Ewald's application. Ewald's petition contains the statement: "I am a member of the Progressive Political Party."

C. J. Cunningham tendered a petition that his name be placed upon the nominating ballots of the Democratic party to be voted at the August primary as a candidate for the Democratic nomination for Representative from the Fifty-first Legislative District. His petition was also rejected. It contains the statement: "I am a member of the Democratic political party, and affiliated with it and supported its nominees at the last election, to-wit: November 5, 1912." He registered as a Republican.

"Carl J. Johnson, Charles I. Groves, and Theodore H. Diehl, who signed the nominating papers of Gardner have instituted a suit against the county clerk, seeking to compel him to place Gardner's name on the ballots of the Progressive party.

"W. I. Taylor, A. R. Bierbaum and Jacob Emmetsberger, Jr., who signed the papers of Ewald, have filed a similar suit. In each of these cases the interest of the plaintiffs is that of qualified electors of the Propressive party who desire to vote their choice at the primary. These two suits involve the same questions involved in the actions of Gardner, and Ewald, respectively. In each of the five cases, the plaintiff has entered a motion for a writ of mandamus against the county clerk; in each case, the defendant has demurred generally to the petition; the cases are submitted on the following motions and demurrers.

"With this preliminary, we come to a consideration of the Act of 1912, relative to the qualifications of prospective candidates at primary elections and to the petitions by which they must initiate their candidacy. Sec. 6 provides:

"Any qualified elector who files his petition and the nominating petition of electors as hereinafter provided, and is a member of a political party subject to the provisions of this Act, shall have his name printed on the official nominating ballot of his party as a candidate for nomination for any office at any primary election held under the 'provisions of this Act. Said petition shall state the name, age, postoffice, address, political affiliations and all other legal qualifications of the candidate, and shall be in substantially the following form.

"The form prescribed requires that the petition be addressed to the officer with whom it is required to be filed and 'to the members' of the particular party whose nomination the candidate is seeking. The candidate must fill in the following form:

"I am a member of the............................................. political party and affiliated with it and supported its nominees at the last regular election.

"The 'nominating petition' referred to in the excerpt first made from Sec. 6 cannot be signed by any one who is not a 'qualified elector' and 'member' of the political party whose nomination the candidate for whom he has signed is seeking and who is not registered if he lives in a precinct where registration is required. 'Signatures contrary to the foregoing provisions,' so closes Sec. 6, 'shall not be counted.' Sec. 6, therefore, very emphatically confines the right of voters to sign the nominating petitions with which candidates for nomination are required to support their own individual

petitions, to those of candidates seeking nominations at the hands of the particular parties of which the signers are respectively qualified electors. So much for the signers.

"As to the candidate, an analysis of Sec. 6 shows that as a condition precedent to the right to seek nomination by any party required to nominate by primary one must have the following personal qualifications:

"1. He must, at the time he files his petition to become a candidate, be a qualified elector;

"2. He must, at the time he files his petition, be a member of a political party;

"3. He must have, heretofore, affiliated with that party of which he is a member at the time of filing his petition.

"He must have supported the nominees of that party at the last regular election.

"Any one who measures up to these qualifications, and who complies with the formalities prescribed, is entitled to have his name printed upon the official nominating ballot of 'his party' as a candidate for nomination at a primary election.

"When Sec. 6 speaks of 'qualified electors' the reference is, obviously, to electors within the contemplation of the act of which it is a part and which provides for and governs primary elections at which candidates for office are nominated by the voters of political parties as distinguished from regular elections at which officers are chosen by the whole electorate. It is manifest from even a casual reading of Sec. 6 that the 'qualified elector' who seeks the nomination of any party must be a 'qualified elector' of that party and no other.

"Sec. 19 of the Act enumerates the 'qualifications of electors' the reference being particularly to those having the right to vote at a primary election. These must possess the qualifications of voters at regular elections, Sec. 145, Constitution, prescribes the qualifications of voters at regular elections. Sec. 147 authorizes the Legislature to require registration in certain cities and towns and declares that 'where registration is required, only persons registered shall have the right to vote.' The Legislature has required registration in certain municipalities, including that class of which the City of Louisville is one. Secs. 1490 and 1499, Kentucky Statutes, set aside certain days preceding the regular election day in November of each year for the

registration of voters, Sec. 1555 required the officials to ask of each person the question, 'What political party do you desire to affiliate with?' and to record his answer, if he choses to give one, in the registration book, one must have the constitutional qualifications and, in addition, in precincts where registration is required, must have registered during the days set aside for that formality immediately preceding the impending election in which he desires to participate. These qualifications are, by Sec. 19 of the Act of 1912, essential to enable one to participate in a primary election.

"In addition to these qualifications of a voter in a regular election, Sec. 19 prescribes the special qualifications of an elector in a primary election:

" 'In precincts where registration is required, no elector, except those entitled to be specifically registered as herein provided, shall be entitled to vote in any primary unless he is registered in the registration book of said precinct for the preceding year as affiliating with the party whose ballot he offers to vote. If so registered he shall be entitled to vote the ballot of the party with which he is registered, and no other. In other precincts qualified electors shall be allowed to vote only the ballot of that party with which they de-declare their affiliation.'

"Sec. 20 of the Act authorizes a special registration to be held fourteen days prior to the date of the primary election, at this, voters who were, for certain specified causes unable to register at the registration of the preceding fall and those who were not then qualified to do so may be registered for the purpose of voting in the primary of that party of which they declare themselves members.

"There is, therefore, no escape from the plain meaning of Sec. 19 that registration and declaration of party affiliation, in precincts where registration is required are necessary to qualify voters to participate in primaries. The 'qualifications of electors' being defined by Sec. 19 that definition must be applied to the term 'qualified elector' in Sec. 6, a 'qualified elector' being neither more nor less than one possessing the 'qualifications of electors.' Board of Councilmen of Frankfort v. Commonwealth, 29 R., 699.

"It is very clear, in consequence, that no one who resides in a precinct where registration is required is a 'qualified elector' unless he has registered and de-

clared his party affiliation; and Secs. 6 and 19 demonstrate beyond question the intention of the Legislature to strictly confine the nominations of the parties to which the Act of 1912 applies to their respective qualified electorate.

"The petition tendered by Gardner to the county clerk showing that at the registration preceding the last regular election he registered as a Democrat; he is, consequently not a qualified elector of the Progressive party whose nomination he seeks.

"The petition tendered by Ewald, while stating that he is a member of the Progressive party, does not show that he affiliated with it and supported its nominees at the last regular election, as is required by Sec. 6. Moreover, it apears from the record that he registered as a Democrat; like Gardner, therefore he is not a qualified elector of the Progressive party.

"The petition which Cunningham tendered to the county clerk, while stating that he is a member of the Democratic party and affiliated with it and supported its nominees at the last regular election, shows that he registered as a Republican. He is not a qualified elector of the Democratic party.

"It follows that the county clerk properly rejected the petition of Gardner, Ewald, and Cunningham, unless the Act of 1912, under the terms of which he acted, is open to some constitutional objection. It is unnecessary to the decision of these cases to consider or determine what is meant by the requirement of Sec. 6 that the petitioner states that he has affiliated with a particular party and supported its nominees at the last election.

"A clear purpose of the Legislature evidenced in the Act is the preservation of the integrity of the dominant political parties. This is to be accomplished, in those localities in which registration is required, by confining the right to vote in the primary of any party to the publicly declared and legally recorded members of that party and by restricting the right of candidacy for the nominations of any party to the publicly declared and legally recorded members of that party who have been such, at least since the registration preceding the last regular election—that is to say, during a period of about nine months. Putting aside the question as to the voter, with whom we are not here called upon to deal, the Act substantially prescribes the qualifications

of candidates for party nominations at party primaries, one being that they shall have been members of the parties whose nominations they respectively seek since the registration preceding the last election.

"It is objected that this excludes from candidacy for nominations several classes of persons: (1) Those who registering or voting at the last regular election as members of one party, in good faith change their political views and desire to seek the nominations of other parties; (2) Those who, becoming of age, since the last regular registration and election, aspire to candidacy for nominations; (3) Those who, while legal voters, were by unavoidable casualty or misfortune prevented from registering or participating in the last regular election; (4) Those who, moving from other states into precincts of this state where registration is ncessary since the last registration and election, had no opportunity to register or to participate in the last election; and (5) Those who, moving from precincts in this state where registration is not required into precincts of this state where it is required, could not register prior to the last election. It is claimed that in view of the exclusion of these several classes from the right to become candidates for party nominations they are denied a privilege which is specially accorded others, contrary to those prohibitions of the State Constitution against the granting of exclusive privileges and relative to the exercise of arbitrary power and contrary to the declaration of the Fourteenth Amendment to the Federal Constitution that no state shall abridge the privileges and immunities of citizens of the United States.

"Considering first the alleged repugnance of the Act of 1912 to the Fourteenth Amendment, it seems sufficient to say that the privileges and immunities of citizens of the United States which are protected against abridgment by the states are those which arise out of the nature and essential character of the National government; the National Constitution, the National treaties, or the acts of Congress, as distinguished from those belonging to the citizens of a state. Slaughter House Cases, 16 Wall., 36.

"The right to a voice in the selection of officials is not such a privilege; it is a mere political right, conferred by the state alone upon such equal conditions as it deems wise, which the Legislature may regulate to any extent not prohibited by the Constitution, State and

Federal. Minor v. Happersett, 21 Wall, 162; Cooley Constitutional Limitations (6 Ed.), 762.

"The exclusion by the state from the right of suffrage carries with it the exclusion from the right to hold office. Atchison v. Lucas, 83 Ky., 451.

"If exclusion from the right to vote is not an abridgment of the privileges of citizens of the United States, exclusion from the kindred political right to hold office is not; this being true, neither is exclusion from the right of candidacy for office such an abridgment. How much less is exclusion from candidacy for mere nomination as a candidate for office.

"Coming now to the particulars in which the Act of 1912 is said to be offensive to the Constitution of Kentucky, the opinion of the Court of Appeals of Kentucky touching this legislation in Hodge v. Bryan, 149 Ky., 110, seems to necessarily exclude the idea that it grants exclusive privileges or is an expression of arbitrary power. The Legislature may prescribe qualifications for office holders, but it cannot exclude persons from office or from candidacy for office. In re Callahan, 200 N. Y., 59; 93 N. E., 262; Rathbone v. Wirth, 150 N. Y., 450; 34 L. R. A., 408; Indiana v. Denny, 4 L. R. A., 65, (Ind.); Evansville v. Indiana, 4 L. R. A., (Ind.).

"If the Act of 1912 operated to exclude from public position any one qualified to hold office or interfered with the enjoyment of the elective franchise, it would be invalid. But it has no bearing on the right to hold or become a candidate for office or upon the right of suffrage. The primary provided for is not an election within the meaning of the Constitution. Hodge v. Bryan, 149 Ky., 110; Montgomery v. Chelf, 118 Ky., 766.

"The Act of 1912 dealt, as its title indicates, with 'the nominations of candidates by political parties at primary elections' and the 'placing of names of candidates on the ballots to be voted for at general elections.' The right of any qualified person who may desire to run for office is fully preserved by other appropriate legislation. It is argued that the Act is invalid in that it prevents two or more parties nominating the same candidates and the contention is supported by authority. It has been held that, in the absence of statute, a candidate's name may appear more than once on the ballot: Miller v. Pennoyer, 23 Ore., 364; 31 Pac., 830; Payne v. Hodgson, 34 Utah, 269; 97 Pac., 132; Fisher

v. Dudley, 74 Md., 242, 12 L. R. A., 586; Simpson v. Osborne, 52 Kan., 328, 34 Pac., 747.

"It has been held also that a statute prohibiting the appearance of a candidate's name on the ballot more than once is invalid: Murphy v. Curry, 137 Cal., 469; 59 L. R. A., 97; In re Callahan, 200 N. Y., 59; 93 N. E., 262; Johnson v. Grand Forks Co., 113 N. W., 1074, (Ind.).

"Such statutes have also been upheld: Todd v. Election Commissioners, 104 Mich., 474; 29 L. R. A., 330; State v. Bode, 55 Ohio St., 224, 34 L. R. A., 498; State v. Porter, 13 N. D., 406; 67 L. R. A., 473; State v. Superior Ct., 60 Wash., 370, Ill. Pac., 233.

"In Kentucky, Sec. 1454 of the Statutes governing regular elections provides that where a person has been nominated by convention and is also a candidate by petition, 'his name shall be placed on the ballot at once.' This statute has never been declared invalid, but was cited and approved in Eversole v. Holliday, 123 Ky., at page 503, where it is said:

" 'The purpose of the statute as made manifest by its reading was to prevent the same person from being placed on the ballot in two places—as nominee of the party and by petition.'

"The effect of the Act of 1912 is to prohibit the nomination of any candidate by more than one of the parties subject to its provisions. It is not thought that this is contrary to any constitutional principle. The Constitution embodies limitations upon the power of the Legislature. That instrument in no way curtails the right of the Legislature relative to the manner or methods of nominating candidates for office. In the absence of constitutional limitation, it seems that the Legislature has the inherent authority to legislate on the subject, free from judicial obstruction. In State v. Superior Court, *supra,* the Supreme Court of Washington said:

" 'Political parties being neither mentioned, protected nor favored in the Constitution, a law will not be held unconstitutional, although in its workings it may destroy those organizations.'

"And in State v. Nichols, 50 Wash., 508, 97 Pac., 728; in answer to the argument that the primary law there under consideration would tend to disrupt political parties the same court said:

" 'It seems to us this is a political rather than a judicial question, and that an appeal from the legislative decision must be made to the people rather than to the courts.'

"It is no less within the province of the Legislature to enact, without judicial interference, laws tending to preserve the integrity, of political parties. It is said in Rouse v. Thompson, 228 Ill., 522; 81 N. E., 1109: 'The object of holding a primary election by a political party is to select party candidates, and it is too plain for argument that no voter should be permitted to vote at the primary election of a political party unless he is a member of such party, and unless provision is made to prevent persons voting at a primary election for the candidates of a party who are not affiliated with such party, the whole scheme of nominating party candidates by a primary election would fail because of being incapable of execution * * *. The members of the several political parties must be guaranteed by law the right to select their candidates for office with the same freedom as they have the right to choose them after they are nominated, or the primary election at which they vote for candidates is a delusion and a fraud upon the individual voter * * *. "If the independent voter or the voted affiliated with an opposition party can vote at the primary election of a party with which he has no political affiliation, and thereby control the nominations of a party to which he is opposed and whose candidates he will vote against at the polls, the freedom of the primary election is destroyed. What regulations should be had to secure fair primary elections must rest largely with the Legislature, and the courts should not override the discretion placed in that branch of the government by the Constitution, unless it clearly apears that the constitutional rights of the individual voter have been infringed.' State v. Superior Court, 60 Wash., 370, 11 Pac., 233; Britton v. Commissioners, 129 Cal., 337; 51 L. R. A., 115; State v. Flaharty, 136 N. W., 76, 41 L. R. A., (N. S.), 132; State v. Curyea, 138 N. W., 165, 41 L. R. A., (N. S.), 1088.

"We are clear that in the Act of 1902 the Legislature, unrestrained by constitutional restrictions, has not, in so far as the particular matters here involved are concerned, transcended its powers. The questions raised are political, relating wholly to the manner in which the Legislature has exercised its power. With

this the courts have no authority to concern themselves. Were it our province to pass upon the question of the reasonableness or unreasonableness of the regulations prescribed by the Legislature in a matter wholly within its control, we would not pronounce them at all unreasonable; but we consider the Legislature itself more competent to decide that matter.

"It is urged that in requiring the prospective candidate to state in his petition that he supported at the last election the nominees of the party whose nomination he seeks. Sec. 6 offends against Sec. 147 of the Constitution. This argument assumes that Sec. 6 requires the candidate to disclose his vote at the last election. It is provided in Sec. 147, Constitution:

" 'All elections by the people shall be by secret official ballot, furnished by public authority to the voters at the polls, and marked by each voter in private at the polls, and then and there deposited.'

"The argument might be answered by pointing out that Sec. 6 of the Act does not require the candidate to do more than to say that he affiliated with his party, and 'supported its nominee.' Perhaps that is not equivalent to requiring him to state that he voted for its nominees. But, assuming that it is, it does not necessarily follow that Sec. 6 violates the Constitution. The presumption is always to be indulged in favor of the constitutionality of an act of the Legislature. Daniels v. Trustees, 78 Ky., 542. The presumption is always to be indulged that it is not the purpose of the Legislature to infringe the Constitution. Commonwealth v. International Harvester Co., 131 Ky., 551.

"Presuming then that the Legislature did not intend that Sec. 6 should violate the constitutional provision that elections shall be 'by secret official ballot,' we may consider what is meant by this phrase. Under the circumstances, resort to that rule of construction which allows consideration of the prior state of the law and the evil to be remedied is justified. In Cooley's Constitutional Limitations, (6 Ed.), 760, it is said of voting by ballot: 'The distinguishing feature of this mode of voting is that every voter is thus enabled to secure and preserve the most complete and inviolable secrecy in regard to the persons for whom he votes, and thus escapes the influence which, under the system of oral suffrages, may be brought, to bear upon him with a view to overbear and intimidate, and thus prevent the

real expression of public sentiment. * * * The system of ballot voting rests upon the idea that every elector is to be entirely at liberty to vote for whom he pleases and with what party he pleases, and that no one is to have the right, or be in position to question his independent action, either then or at any subsequent time.'

"It is said in 15 Cyc, 289, Note 4, with reference to constitutional or statutory requirements as to secret ballots: 'The object of this privilege is to secure the independence of the voter and enable him to express his preference secretly, without being subject to intimidation or being made the victim of ill-will of persecutions on account of his vote.'

"The primary purpose of the secret ballot may, therefore, be taken to be the protection of the voter. It is unanimously held that a voter cannot be compelled to disclose how he voted. It is held in some cases that he may waive his privilege of silence and testify in judicial proceedings. Dixon v. Orr, 49 Ark., 238, 4 Am. St. R., 42; Boyer v. Teague, 106 N. C., 576, 19 Am. S. R., 547; Cooley Constitutional Limitations, (6 Ed.), 763.

"In Johnson v. Commonwealth, 90 Ky., 53, it was said by the Court of Apeals of Kentucky: 'The system of voting by ballot is based upon the idea that it makes the action of the voter independent, and to enable him to vote for whom he pleases. No one has the right to examine the ballot of the voter, or to testify as to its contents with a knowledge acquired in any other mode than in the information given him by the voter himself. His ballot, says Mr. Justice Cooley, 'is absolutely privileged, and the veil of secrecy should be impenetrable, unless the voter voluntarily lifts it.'

"In Commonwealth v. Barry, 98 Ky., 394, the court held that, in the prosecution of an election officer for falsifying the returns, the testimony of voters as to how they voted was not admissible, the ruling being apparently based largely upon the fact that 'it would be dangerous practice to allow the official action of the officers of the election, watched and inspected as it may be by inspectors, to be contradicted by the parol testimony of the voter.'. This was followed in Major v. Barker, 99 Ky., 305, a contested election, where it is said: 'It is conceded that the voter cannot be compelled by subpoena to appear and testify how he marked his ballot. If he were permitted to so testify he could then be subjected to a moral compulsion from his party

associates. One party might obtain from willing witnesses testimony which the other party would be powerless to rebut because unable to compel a statement of the truth. It is admitted that injustice may be done in individual cases by the application of this rule, but the consideration mentioned and the evident policy of the law that the secrecy of the ballot should be inviolable outweigh the occasional hardships.'

"In Tunks v. Vincent, 106 Ky., 829, a contested election case, it is held on authority that one who has voted illegally is a competent witness as to how he voted and may be compelled to disclose it unless he pleads that he would thereby incriminate himself, a ruling which emphasizes the protecting character of the secret ballot as to legal voters. In these cases questions arising directly out of and intimately involving the conduct of elections were at issue and disclosures by electors of their votes had direct bearing upon the elections themselves. It is not necessary to attempt to say what is meant by the constitutional requirement of a secret ballot; but it is apparent that its spirit does not extend to the point of preventing the Legislature requiring that a candidate for a party nomination shall establish his membership in that party by stating that he voted for its nominees at the last election. This has no connection with the election and is not related to the purpose which evolved the secret ballot nor to the evil it was designed to remedy.

"Finding no infirmity in the Act of 1912, we must sustain the demurrers to the several petitions."

For the reasons indicated in the beginning of the opinion the appeals in the cases of Chas. T. Gardner v. P. S. Ray and Geo. R. Ewald v. P. S. Ray are dismissed; and the judgments in the cases of W. S. Tyler, &c. v. P. S. Ray and Carl J. Johnson, &c. v. P. S. Ray are affirmed.

Whole court sitting except Judge Nunn, absent by reason of illness.