## Farleigh, et al. v. Reedy, et al.

(Decided September 29, 1915.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1.  Elections—Qualifications of Officers of.—The qualifications required of election officers, also the duties of executive committees of political parties of the several counties of the State, in submitting to the county boards of election commissioners thereof lists of names from which to select election officers, as well as those of the election boards in appointing election officers, are prescribed by section 1596a, subsection 6, Kentucky Statutes, which contains no provision requiring that the lists submitted by the party committee shall, in all instances, confine the selection of names, from which election officers are to be appointed by the election board, to members of the party represented by such committee; but by the proviso in the statute, where there are less than eight electors in a precinct of the party represented by the committee, the committee is permitted to submit a list, including enough electors from some other political party, to make the number submitted eight. If, however, the party committee elects to submit a list of less than eight names, it is, in that event, the meaning of the proviso that the names of less than eight submitted

by the list, must be those of electors in the party represented by the committee, and constitute all the electors of the precinct belonging to the party, possessing the qualifications required of an election officer. On the other hand, if the committee of a party be unwilling to risk the members of its own party in a precinct to act as election officers, although enough of them reside in such precinct to make a list of eight names, there is nothing in the statute that would prevent such committee's selecting from among the voters of a different party, in whose integrity and fairness it might have confidence, a list of eight names from which the board of election commissioners might appoint election officers for such precinct to represent the party for which the committee acts. It is not the meaning of the statute that the county committee of the party, whether Democratic or Republican, destitute of members in an election precinct, shall have no voice in the selection of election officers therefor. Although such selection would have to be made by the committee from members of an opposing party, it could at least name such of these as it might be willing to trust to assist in conducting the election in such precinct, believing that they would demand that it be fairly and honestly held.

2. Elections—Party Committee—Authority of to Determine Party Affiliation of Persons Whose Names Appear on List Furnished Board of Election Commissioners from Which to Appoint Election Officers.—While the law contemplates that general or regular elections shall be held by officers equally appointed from lists of names furnished by the committees, respectively, of the two dominant political parties of the State, the committee of each party must be allowed to determine whether the persons whose names are contained in the list it submits from which the county board of election commissioners is required to appoint election officers, are members of or affiliated with the political party represented by such committee, and the board of election commissioners are bound by the certification of the committee that they are members of the party represented by the committee. But the board of election commissioners may determine whether the persons whose names are submitted by the lists are otherwise qualified to act as officers of election. That is, whether, in addition to the qualifications required of a voter by sections 145, Constitution, and 1439, Kentucky Statutes, any of such persons has committed homicide, or been convicted of a felony or is under indictment therefor; whether he is sober, temperate, discreet and of good demeanor; or whether he has anything of value wagered on the result of such election, or is a candidate to be voted for at such election; and, finally, whether he is capable of reading the Constitution of the Commonwealth in English and of writing a plain and legible hand. If no list is submitted to the county board by the party committee it is empowered to select and appoint officers of election for the precincts for which such lists were not furnished, but in doing so the board must divide the election officers in such precincts equally between the two dominant political parties, as provided by

the statute; and under such circumstances will be authorized to judge of the party affiliation of those appointed, in addition to determining whether they possess the other qualifications above enumerated.

3. Elections—Officers—Previous Registration Not Necessary to Show Party Affiliation.—In order to qualify an elector of a precinct to act as an·election officer, it is not necessary that he should have registered as affiliating with the party he is appointed to represent at the registration had for the last general election, held previous to, his appointment. He could have been, at the time of the submission of the list containing his name, and may continue until the coming November election, a member of the party to which he is represented as belonging, without having registered or even voted the previous year. However, an election officer appointed as of·the time required by the statute, if a resident of a precinct where registration is required, may, by the failure to register after his appointment, become disqualified to vote at the succeeding November election and, in consequence, be disqualified to act as an election officer; in which event the disqualification would give cause for his removal by the county board of election commissioners and the appointment of another in his stead, as provided by subsection 3, section 1596a, Kentucky Statutes. Registration, as essential to party membership or affiliation, is only required by the Primary Election Acts of 1912 and 1914, but these statutes have nothing to do with the conduct of a general election, except to the extent they affect the right of a candidate to have his name printed on the ballot, at the general election, as the candidate and nominee of a political party and under its device. The primary election statute was enacted to promote and maintain party organization and integrity of party nominations; hence open declaration of party allegiance, both on the part of candidates who seek party nominations and voters who confer them, are essential to the proper working of the primary law. A primary election is not an election in the meaning of the Constitution.

4. Elections—Injunction—Propriety of the Granting of in This Case Beyond Question.—It being apparent from the record that all the persons whose names were contained in the lists submitted by the Republican committee of Jefferson county to the board of election commissioners for appointment as election officers for the precincts in question, have declared their present affiliation with the Republican party, their intention to so register at the approaching October registration, and to vote for the nominees of that party at the election to be held in November, 1915, the propriety of the action of the circuit court in granting the injunction complained of cannot be·questioned.

GEO. DuRELLE, HUSTON QUIN and ALEX. G. BARRET for appellants.

JOHN C. DOOLAN, A. J. CARROLL and EDW. P. HUMPHREY for appellees.

OPINION OF JUDGE SETTLE ON MOTION· TO DISSOLVE IN-JUNCTION.

In this action, brought by the plaintiff James F. Farleigh, a candidate and the nominee of the Republican party for the office of Judge of the Jefferson Circuit Court, chancery branch, second division, Thirteenth Judicial Distict, to be voted for at the November election, 1915; and the plaintiff A. E. Hopkins, chairman of the Republican executive committee of Jefferson County, against James P. Reedy and Charles J. Cronan, members of the board of election commissioners in and for Jefferson County, and who, with Lafon Allen, constitute such board of election commissioners, it is alleged in the petition that although the Republican executive committee of Jefferson County, as required by law, designated in writing for each precinct in Jefferson County a list of not less than eight names to the Jefferson County Board of Election Commissioners, from which to select and appoint election officers to serve at the registration of voters on the 5th and 6th days of October, 1915, and at the election to be held in November, 1915, the defendants, Reedy and Cronan, constituting a majority of the board of election commissioners, wrongfully· refused to appoint election officers from the lists of names so furnished it for the three following precincts, respectively, viz.: 26th precinct, second ward; 13th precinct, first ward; 32d precinct, third ward, all in the city of Louisville.

It is further alleged in the petition that "each and all of the aforesaid persons so designated for appointment as election officers are discreet, qualified voters of the precincts for which they were, respectively, designated; that they have resided in their said respective precincts for twelve months next preceding the date of said election; that none of them has ever committed homicide or been convicted of a felony, or is under indictment therefor, and that each and all of them are sober, temperate, discreet and of good demeanor; that none of them has anything of value wagered on the result of the said election to be held on the second day of November, 1915, aforesaid; nor is any of them a candidate to be voted for at said election; and each and all of them are capable of reading the Constitution of the Commonwealth in English and of writing a plain and legible hand; and plaintiffs further state that each of

said persons so designated as aforesaid for appointment as election officers aforesaid belongs to the Republican party; is a male person over twenty-one years of age and is a citizen of the United States and Jefferson County in the State of Kentucky. * * * The pretext upon which said defendants are making said threat respecting the twenty-sixth precinct of the second ward, as above mentioned, is that none of said persons so designated by said Republican County Executive Committee, was registered at the last preceding registration in October, 1914, as belonging to the Republican party, and their pretext respecting the other two precincts above mentioned, being that only one person on the lists for each of said precincts, was registered in October, 1914, as belonging to the Republican party. The facts are that at said registration in October, 1914, some of said persons were not registered at all; others were registered without any party affiliation being recorded, and the others were registered as at that time affiliated with a political party other than the Republican party. However, the plaintiffs state that all of said persons now belong to the Republican party and intend to register as Republicans at the registration to be held on the 5th and 6th days of October, 1915, and to vote for the Republican nominees and ticket at the election to be held on the second day of November, 1915.''

The prayer of the petition asked that the board of election commissioners be compelled by mandatory injunction to appoint from the lists, respectively, furnished them by the Republican Executive Committee of Jefferson County for that purpose, two election officers in each of the precincts named. The answer of the defendants, Reedy and Cronan, admits their refusal to appoint election officers for the three precincts in question from the lists of names furnished them for that purpose by the Republican Executive Committee of Jefferson County, for the reasons thus stated in the answer:

''They state that one of the requirements of the statute in regard to the selection of election officers as representing a particular party is that such officers so selected to represent said party must be members of said party and in precincts where registration is held under the law that they must have been registered at the last preceding registration as affiliating with said political party. They state that, as set forth in the petition,

the list of names furnished in each of the three precincts consisted of persons who were not registered as members of the Republican party, but who, in fact, where they were registered were designated as affiliating with other political parties and that under the terms of the law they were, therefore, not eligible to serve as officers of election on behalf of the Republican party, and these defendants, as members of the Board of Election Commissioners, had no right or power under the law to appoint said named persons. The defendants further state that although under the law they would have the right to designate other persons to act as officers of election and as representing the Republican party in said precincts, that it is the purpose and intention of these defendants, as they have repeatedly declared, to permit the Republican County Executive Committee for Jefferson County to substitute the other names of their selection in lieu of the names of said persons who are ineligible under the law, and that the only requirement and condition imposed by these defendants was and is that persons designated to serve as election officers must be eligible. * * * They state that in each of the three precincts mentioned in the petition that there are more than eight persons qualified to act as election officers and who registered as Republicans. in the registration held in October, 1914.''

On the hearing of the application for the injunction, which was had in the Jefferson Circuit Court, chancery branch, first division, affidavits of a majority of the persons designated by the lists for the three named precincts, respectively, whom the board refused to appoint election officers, were read in support of, and appear to fully sustain, the averments of the petition as to their qualifications as voters and present affiliation with the Republican party.

The injunction was granted by the circuit court as prayed, and the defendants, being dissatisfied with the judgment manifesting that ruling, have entered before the writer of this opinion, a Judge of the Court of Appeals, a motion to dissolve the injunction.

Two questions are presented by the record for decision on this motion: (1) Does the law require that the list of eight names for each precinct submitted by the county executive committee of a political party, from which two election officers are to be appointed by the county board of election commissioners, must contain

only members of the party represented by such county executive committee? (2) Conceding, for the purposes of the argument, that the law does require that all persons on the list be members of the political party whose county executive committee submits the list, is it necessary that they must have registered at the last preceding registration as affiliating with such party in order to render them eligible to appointment as such officers? The second question will first be considered. The answer to each of these questions must, in the main, be arrived at by the proper construction to be given Section 1596a, Sub-section 3, Kentucky Statutes, which provides:

"Said county board shall, annually, not later than September the twentieth, appoint for each election precinct in the county two judges, one clerk, and one sheriff of election, to act as such in their precincts, all of whom shall be discreet qualified voters of the precinct for which they are appointed, and shall hold their offices for one year and until their successors are appointed and qualified. The county executive committees of the two political parties having representation on the State Board and county boards of election commissioners may, annually, on or before the fifteenth of September, designate in writing for each precinct a list of not less than eight names to the county board of election commissioners: *Provided,* If in any precinct there be not as many as eight electors possessing the qualifications of an election officer, belonging to the political party filing said list of names, then a less number may be designated. And from these names, if any are so designated, the officers of election shall be selected from said list as follows: One judge at each voting place shall be selected from each of said lists, and in like manner the sheriff shall be chosen from one of said lists and the clerk from the other. If no lists are submitted to the said county board, then the officers of the election shall be so selected and appointed as that one of the judges at each place of voting shall be of one political party, and the other judge of a different political party, and there shall be a like difference at each voting place between the sheriff and clerk of election. No person shall be eligible as an officer of election who has not resided in the precinct for twelve months, next, preceding the day of election, or who has committed a homicide, or who has been convicted of a felony or is under indictment therefor, or who

is not sober, temperate, discreet and of good demeanor, or who has anything of value wagered on the result of such election, or who is a candidate to be voted for at such election, and who is not capable of reading the Constitution of the Commonwealth in English and of writing a plain and legible hand. It shall be the duty of said county board of election commissioners to determine the qualification of all election officers before appointment. * * *"".

Coming, then, to the concrete facts of this case and admitting for the purpose of the argument that the Republican committee of Jefferson County were required by the statute to furnish the board of election commissioners lists containing names only of members of the Republican party for election officers, there is not to be found in any part of it a provision declaring that they must have registered at the last preceding registration as members of that party. The language: "*Provided,* if in any precinct there be not as many as eight electors possessing the qualifications of an election officer, belonging to the political party filing said list of names, *then a less number may be designated,*" can, in no event, be construed to mean more than that the entire eight names must be of the party furnishing the list. Obviously they could and might belong to it notwithstanding their failure to register last year as affiliating with it.

The contention of defendants that registration as affiliating with the party is essential to membership in it, rests upon the sole ground that it is a requirement of the primary election acts of 1912 and 1914. The contention is untenable, for these statutes have nothing to do with the conduct of a general election, except to the extent they affect the right of a candidate to have his name printed on the ballot, at such election, as the candidate and nominee of a political party and under its device. Francis v. Sturgill, 163 Ky., 664.

In Hager v. Robinson, 154 Ky., 489, it was held that the primary election statute was enacted to promote and maintain party organization and the integrity of party nominations; therefore, open declaration of party allegiance, both on the part of candidates who seek party nominations and voters who confer them, was absolutely essential to the proper working of the primary law; hence, under the primary law party affiliation, both as to candidate and voter, must be shown by their declared

support of their party nominees at the last election, and, if residing in a city where registration is required, by previous registration as a member of the party. Gardner v. Ray, 154 Ky., 509.

The primary statute, neither in express terms nor by implication, declares or defines the qualifications of an election officer, either at the registration or a general election. It is true, as argued by counsel for defendants, the primary election statute prescribes what shall constitute party membership or affiliation on the part of the candidate to entitle him to get on the primary ballot, and on the part of the voter to entitle him to vote in the primary, but it gives no definition of party membership as applicable to election officers or voters at a general election. All it says on the subject of party membership and as to the necessity of registration as showing party affiliation, is applicable to the primary election alone; and it has been repeatedly held in this jurisdiction that a primary election is not an election in the meaning of the Constitution. Hager v. Robinson, 154 Ky., 489; Gardner v. Ray, 154 Ky., 509; Montgomery v. Chelf, 118 Ky., 766; Hodge v. Bryan, 149 Ky., 110.

In the case last cited it is in the opinion said:

"The Constitution does not require the Legislature to enact primary election laws. It makes no reference to them; therefore, as the Constitution does not prohibit them, the Legislature had a right to pass such a law. In Montgomery v. Chelf, 118 Ky., 766, this court expressly declared that the word 'election' as used in the Constitution, had no application to primary elections. The word 'election' as used in the primary law does not refer, in fact, to the election of an officer. It only means that the people should, on the first Saturday of August in each year select, by means of a primary election, persons as candidates to be voted for at the general election held the following November. There is no election in August; it is only a selecting or naming of candidates to be actually voted for at the November general election."

For the foregoing reasons it is not incompetent for the Legislature to put in a primary election law requirements as to the qualifications of candidates and voters at such elections, that are not found in the laws relating to a general election; *Provided,* such requirements be not obnoxious to the Constitution of the State; hence it

has been held that such provisions of the primary election law of this State as require the showing of party fealty and affiliation on the part of candidates voted for and persons voting in the primary, are not obnoxious to the Constitution, though the enforcement of such provisions practically amount to an invasion of the secrecy of the ballot.

From what has been said the conclusion appears inevitable that the statute which authorized the Republican committee to submit the names from which the board of election commissioners of Jefferson County may appoint election officers, contains no provision requiring that they must have registered last year as members of the Republican party. They could have been at the time of the submission of the list, and may continue until the coming November election, members of the Republican party, without having registered or even voted last year. It is true, an election officer appointed as of the time required by the statute, if a resident of a city where registration is required, may, by the failure to register after his appointment, become disqualified to vote at the succeeding November election, and, in consequence, be disqualified to act as an election officer, but in such event the disqualification would give cause for his removal by the county board of election commissioners and the appointment of another in his stead, for Sub-section 3, Sec tion 1596a of the statute, *supra*, provides:

"The county board of election commissioners shall have the power to remove all election officers who are disqualified under the provisions of this act, but no such removal shall be made within five days of the election; nor shall any such removal be made at any time without cause, and the grounds therefor shall be reduced to writing by said board and made a part of its records."

It now remains to be determined whether the statute controlling general elections requires that the persons whose names appear on the list furnished by a party committee from which the county board of election commissioners are empowered to appoint election officers, be members of the political party submitting the names? The statute, *supra*, does not seem to require that the county executive committee, in selecting the names to be submitted by the lists furnished the county board of election commissioners, shall confine the selection to members of the political party represented by such com-

mittee. It in the first place declares, however, that. all
of the officers of election shall be "discreet, qualified
voters of the precinct." In order to ascertain the mean-
ing of the words "qualified voters" reference must be
had to Section 145, Constitution, and Section 1439, Ken-
tucky Statutes, enacted in conformity thereto and ex-
pressed in substantially the same language, as follows:

"*Qualification of Voters.*—Every male citizen of the
United States of the age of twenty-one years, who has
resided in the State one year, and in the county six
months, and in·the precinct in which he offers to vote
sixty days next preceding the election, is a voter in said
precinct and not elsewhere."

The only qualifications for an election officer, other
than those imposed by the above provisions of the Con-
stitution and Kentucky Statutes, are found in the follow-
ing provisions of Sub-section 3, Section . 1596a, Ken-
tucky Statutes:

"No person shall be eligible as an officer of election
who has not resided in the precinct for twelve months,
next, preceding the day of election, or who has commit-
ted a homicide, or who has been convicted of a felony or
is under indictment therefor, or who is not sober, tem-
perate, discreet and of good demeanor, or who has any-
thing of value wagered on the result of such election,
or who is a candidate to be voted for at such election,
and who is not capable of reading the Constitution of
the Commonwealth in English and of writing a plain
and legible hand."

Manifestly, there is nothing in the  above language
indicating membership in the party as a qualification.
There is, however, in the statute, following the provision
requiring the party committee to submit a list of eight
names for each precinct, the following language bearing
on the matter of party membership:

"*Provided,* if in any precinct there be not as many
as eight electors possessing the qualifications of an elec-
tion officer, belonging to the political party filing said
list of names then a *less number may be designated.*"

The language of this proviso does not declare that
membership in the party is a necessary qualification for
an election officer. From the use of the terms "electors
possessing the qualifications of an election officer belong-
ing to the political party," the implication is that be-
longing to the party is a matter in addition to the "quali-.

fications of an election officer." Evidently, the purpose of the proviso is to relieve or excuse the party committee from submitting as many as eight names in any precinct, if the precinct contain less than eight electors belonging to the party. If, however, there are less than eight electors in the precinct, of the party represented by the committee, the latter may still submit a list, including enough electors from some other political party, to make the number submitted eight; but if the party committee elects to submit a list of less than eight names, then the names must be those of electors in the party represented by such committee, and constitute all the electors of the precinct belonging to the party possessing the qualifications required of an election officer. The committee is not bound to submit as many as eight names for the precinct. It may submit eight, or less under the circumstances stated in the proviso, and from such list of eight or less the county election commissioners must select two officers.

On the other hand, if the committee of a party be unwilling to risk the members of its own party in a precinct to act as election officers, although enough of them reside in such precinct to make a list of eight names, there is nothing in the statute, *supra,* that would prevent such committee's selecting, from among the voters of a different party in whose integrity and fairness it might have confidence, a list of eight names from which the board of election commissioners might appoint election officers for such precinct to represent the party for which the committee is acting.

There are said to be in each of several counties in this State one or more precincts in which there are no voters belonging to the Democratic party; others in which there are precincts containing no Republican voters. Surely it is not, as contended by defendants, the meaning of the statute that the county committee of the party, whether Democratic or Republican, destitute of members in such precincts, shall have no voice in the selection of election officers therefor. Although such selection would have to be made by the committee from members of the opposing party, it could at least name such of these as it might be willing to trust to assist in conducting the election, believing that they would demand that it be fairly and honestly held.

It is concluded that while the law contemplates' that general or regular elections shall be held by officers equally appointed from lists of names furnished by the committees, respectively, of the two dominant political parties of the State, the committee of each party must be allowed to determine whether the persons whose names are contained in the list it submits from which the county board of election commissioners is required to appoint election officers, are members of or affiliated with the political party represented by such committee. The board of election commissioners, insofar as the matter of the party membership or affiliation of the persons named on the list for appointment as election officers is concerned, must accept the judgment and declaration of the county executive committee that they are members of the party represented by the committee, although the names furnished by the list submitted by the committee may not, in fact, be members thereof. But the board of election commissioners may pass upon and determine whether the persons whose names are submitted by the list are otherwise eligible and qualified to act as officers of election. That is, the board may determine whether, in addition to the qualications required of a voter by Section 145, Constitution, and Section 1439 Kentucky Statutes, any of such persons has committed homicide, or been convicted of a felony or is under indictment therefor; whether he is sober, temperate, discreet and of good demeanor; or whether he has anything of value wagered on the result of such election, or is a candidate to be voted for at such election; and, finally, whether he is capable of reading the Constitution of the Commonwealth in English and of writing a plain and legible hand.

If no list is submitted to the county board by the party committee, then the county board is empowered to select and appoint officers of election for the precincts for which such lists were not furnished, and in that state of case the county board must divide the election officers in such precincts equally between the two dominant political parties, as provided by the statute; and under such circumstances will be empowered to judge of the party affiliation of those appointed, in addition to determining whether they possess the other qualifications above enumerated.

If, in the matter of selecting and furnishing a list of voters from which the county board may appoint election officers, the county executive committee of a political party should act fraudulently or otherwise prove recreant to such party, by furnishing the county board a list of voters not entitled to represent such party as election officers, the remedy of the party lies in its inherent power to discipline or remove the committee.

Under the election law in force prior to the passage of the present law, which was enacted in 1900, authority to appoint officers of election in each county was vested in the county judge thereof, and the election returns were canvassed and the result certified by a board consisting of the judge of the county court, clerk thereof and sheriff of the county. There was much complaint of the alleged partisan, not to say fraudulent, action of the county judges in appointing officers of election, and of the county boards in canvassing and certifying the returns; the dissatisfaction resulting in the enactment of the present law, which provides for a board of election commissioners in each county, composed of the sheriff and one representative from each of the two dominant political parties in the State, and in this board is vested authority to appoint election officers from lists submitted by the county executive committee of each of the dominant political parties. In other words, it seems to be the object of the present law to remedy the evils resulting from the operation of the former law, by substantially placing in the hands of the committees of the two dominant parties in each of the counties of the State authority to recommend for appointment on the board of election commissioners and as officers of election, representatives in equal proportion from such parties; and the construction given of the statute involved in this case will, it is believed, carry out the intention of the Legislature in its enactment. On the other hand, the construction of it contended for by the defendants must be regarded as inconsistent with its spirit and meaning.

But, if instead of the construction herein given the statute, the conclusion had been reached that it imperatively requires one to belong to the party he is to represent as an election officer, there could still be no doubt of the propriety of the circuit Court's action granting the injunction prayed in this case; as it appears from the record that all the persons whose names were con-

tained in the lists submitted by the Republican committee of Jefferson County to the board of election commissioners for appointment as election officers, have declared their present affiliation with the Republican party and their intention to so register at the approaching October registration, and to vote for the nominees of that party at the election to be held in November, 1915.

For the reasons indicated, the motion of the defendants to dissolve the injunction is overruled. All the other Judges of the Court of Appeals sat with me in the argument and consideration of this case, and all concur in the conclusions reached.