## Black v. Spillman.

(Decided September 30, 1919.)

### Appeal from Trimble Circuit Court.

1. Elections—Primary Elections—Qualifications of Voters.—A primary election is not an election within the meaning of the term, as used, in the Constitution, and it is within the province of the legislature to prescribe the qualifications of the voters and the manner of voting at such election.

2. Elections—Primary Elections—Violation of Statute.—A vote at a primary election, in the manner of the casting of which all the essential requirements of the statute regulating the mode of voting at such an election are violated can not be received.

3. Elections—Illegal Voter Competent to Prove for Whom he Voted. —An illegal voter is a competent witness to prove for whom he voted, and can not refuse to so testify, unless the statements made

by him upon that subject would tend to prove him to be guilty of a public offense, for which he might be prosecuted and punished.

J. BALLARD CLARK and CHAS. CARROLL for appellant.

ROBERT T. CROWE, CLAUDE B. TERRILL, and WM. J. CROWE for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

At the primary election held on the 2d day of August, 1919, the appellant, Henry C. Black and the appellee, H. A. Spillman, were rival candidates for the nomination as a candidate of the Democratic party for the office of representative in the general assembly, from the 59th legislative district,-composed of the counties, Trimble and Oldham. The official count of the vote cast at the primary election showed, that there had been cast and certified as cast for the appellee, 690 votes, and for the appellant, 689 votes. The appellant, in due time, gave notice, that he would contest the nomination of his opponent, upon the grounds, that mistakes had been made by the election officers in counting and certifying the votes cast in four voting precincts, wherein as alleged, the officers had, by mistake, failed to count and certify for appellant all of the votes received by him, and had counted and certified for appellee a greater number of votes, than he had received in such precincts; that, in certain other precincts, Republicans had been permitted to vote, and their votes were certified as having been cast for appellee, and in one precinct, persons were permitted to vote for appellee, who did not retire to the booths and there prepare their ballots, and fold and return same to the election officials, but, their ballots were prepared for them openly, and in the presence of others, by the election officers, without the person having taken an oath, that he was blind, illiterate, or physically incapable of marking and depositing his ballot. The appellee, denying all the grounds of contest preferred, gave notice of grounds of counter contest, the chief of which were, that various persons whose names were given, as well as the voting places, at which their votes were received, had received ballots, but instead of retiring to the voting booths, and there preparing and folding their ballots, so as to conceal the names of the candidates, and returning the ballot folded

to the officers of the election, indicated their votes upon the ballots openly, and in the presence of others, and these ballots were received, counted and certified as having been received by appellee, although the persons, casting same, were not sworn, and did not take an oath, before their ballots were prepared, that they were either blind, or physically unable to mark their ballots, or were illiterate and unable to mark their ballots, from inability to read the English language; and that other persons had voted for appellant, in precincts, in which they did not reside. The recount of the ballots cast in the voting precincts, in which a recount was sought, developed the fact, that appellant in these precincts, had received one vote, less than had been certified for him, and that appellee had received four votes less than had been certified for him, which reduced the total number of votes received by appellee, to 686 votes and that received by appellant to 688 votes. No complaint of this result is made by either party. The court after hearing the evidence offered, adjudged, that two votes be deducted from the vote, certified for appellee, because the votes were not cast, as required by law, and of this, there is no complaint. This reduced the number of votes, received by appellee, to 684. The court, however, adjudged, that fifteen votes of those certified as having been cast for appellant, should be deducted from the total poll for him, which reduced the number of votes, received by him, to 673, and resulted in a judgment to the effect, that appellee had received a plurality of the votes cast, and was entitled to a certificate of nomination, and in dismissing the appellant's proceeding, and from this judgment, he has appealed.

Of the fifteen votes deducted from those certified as having been received by appellant, the proof showed, that one was received, when the voter did not reside in the precinct wherein his vote was cast and received, and the other fourteen, were cast by persons, who declared publicly, for whom they desired to vote, and their ballots were stamped, for them, by an officer of the election, upon the table, in the presence of all present, and then deposited in the ballot box. None of these persons took an oath, that they were illiterate and could not read the English language, nor that they were blind or physically unable to stamp their ballots, for the purpose of voting. Some of these persons were able to read the English

language, but on account of age, were unable to see sufficiently, as stated by them, to properly mark their ballots, because of having left their eyeglasses, at home, but, the greater number were illiterate and unable to read the ballots on that account, and none were physically unable to properly mark their ballots, in voting. With regard to the person, whose vote was cast and received, at the poll, in a precinct, in which he did not, at the time reside, it will be observed, that subsection 19, of section 1550, Ky. Stats., in prescribing the qualifications of voters, at a primary election, among other qualifications, provides, that the voters must have the qualifications prescribed by the Constitution for voters, in a regular election, to be eligible to vote in a primary election, and the Constitution requires, that a person to be qualified, to vote at a regular election, must have resided in the precinct, in which he offers to vote, for sixty days preceding the election, and that he is not a voter elsewhere. Constitution, Section 145.

Touching the fourteen ballots, which were cast by persons who did not take oaths, that they were blind, illiterate or physically disabled, and who voted openly and whose ballots were stamped for them, by an officer of the election, and whose votes were deducted from the number certified for appellant, it is insisted, that the court was in error, in so doing, because there is no provision of the primary election law, which requires such a person to take an oath as to his disability or illiteracy before being permitted to vote openly, and that such oath is not a necessary qualification of such a person to make him a voter at a primary election; that the statute, which prescribes an oath for blind, illiterate and physically disabled persons, before they are permitted to vote without secrecy and to receive assistance in the preparation of their ballots, and which is section 1475, Ky. Stats., is a statute, which applies to regular elections, alone, and not to primary elections, and is no part of the statute, governing primary elections, and that subsection 36, section 1550, Ky. Stats., which applies to primary elections, and by virtue of which subsection, section 1475, *supra,* becomes a part of the primary election law, if it becomes a part, at all, is void, because contrary to the provisions of section 51, of the Constitution, which provides, that "no law shall be revised, amended, or the provisions

thereof extended or conferred by reference to its title only, but, so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length.'' If by reason of subsection 36, section 1550, *supra*, the provisions of section 1475, *supra*, can be applied to the conduct of primary elections, there can be no doubt, that the vote of any person, who though blind, illiterate or physically disabled, can not be received, if he has received assistance in the preparation of his ballot, or votes without secrecy, unless he has taken the oath, prescribed by that section. This court has often held, that the provisions of section 1475, *supra*, are mandatory, and that the ballot of an illiterate person, who has voted openly and with assistance as provided in the statute, and without first having taken the required oath, can not be received nor counted. It is unnecessary, however, in this case, to determine the constitutional validity of subsection 36, section 1550, *supra*, and we do not do so. Subsection 24, of section 1550, Ky. Stats., which is a part of the primary election law, and about the validity of which there is no question, prescribes the manner of voting at a primary election, as follows:

''Any person desiring to vote shall give his name, his residence and the name of his political party to the clerk of the election, who shall thereupon announce the same in the presence of the judges of the election, and if such person is entitled to vote the ballot of the party to which he claims to belong, in such primary election, the clerk shall write on the primary stub of the ballot to be voted by such person, his name and residence. The clerk shall then tear off the ballot at the perforated line and endorse his own name across the back of the ballot and then deliver the ballot to the elector, who shall be entitled to receive only one official ballot, and when the clerk shall deliver said ballot to the elector, said elector shall immediately retire to a voting booth and there prepare his ballot; and when he has prepared it, he shall fold it so as to conceal the names of all candidates thereon and shall immediately return to the officers of the election and deliver his folded ballot to the judges of election. The judges of election shall, in the presence of the elector, remove the secondary stub from said ballot and deposit said ballot in the box provided for the political party for which it is cast.''

It will be observed, that according to the provisions of the foregoing statute, that at a primary election, when an elector shall have received a ballot, it is then his duty "to retire to the voting booth and there prepare his ballot, and when he has prepared it, he shall fold it so as to conceal the names of all candidates thereon and shall immediately return to the officers of election and deliver his folded ballot to the judges of election." If the provisions of section 1475, *supra,* are excluded from application to primary elections, the above are all the provisions made by the legislature, as to the manner of voting at primary elections. Section 147, of the Constitution, requires the legislature to make provisions for the benefit of blind, illiterate and physically disabled persons to vote at regular elections, such as are contemplated by the Constitution, but, such provision has no reference to primary elections, and it is within the province of the legislature to prescribe the qualifications for electors, and the methods of voting at primary elections. Gardner v. Ray, 154 Ky. 509; Montgomery v. Chelf, 118 Ky. 766; Hodge v. Bryan, 149 Ky. 766; Hager v. Robinson, 154 Ky. 489. For an elector to state publicly, at the polls, to the officers and others who may be present, for whom he desires to vote, in a primary election, and instead of retiring with his ballot to the booth and there preparing his vote, and returning with it folded so as to conceal the names of all the candidates, and thus for whom he has voted, and delivering the ballot so folded to the judges of the election, he does not retire to the booth, nor prepare his ballot, but, same is prepared for him by the clerk or other officer of the election, in the presence and sight of all those present, destroys all the secrecy of the ballot, intended and prescribed by the statute, and is in direct violation of every essential requirement of the statute. It is evident, that considering all the provisions of the primary election law, the requirement of ballots, voting booths, and the requirement for an elector to retire to the booth and there prepare his ballot and to fold it so as to conceal the names of the candidates and thus conceal for whom he had voted, and to deliver it thus folded to be put in the ballot box, the requirement that the voting shall be secret, is a mandatory provision, and the ballots of those, who fail to observe the requirements, in accordance with the provisions of the statute, can not be received.

It is insisted, that the court erroneously required the fifteen persons, whose votes were deducted from the number received by appellant, to testify, for whom they voted, but, an examination of the record develops the fact, that they were not required to so testify, except in one instance, and that was in the deposition of a witness before an examiner, and this witnes did not decline to answer upon the ground, that his answer would incriminate him. They each, except the one last mentioned, voluntarily testified as to whom, they voted. Illegal voters are competent witnesses to testify for whom they have voted, and they can decline to so state, only, upon the ground, that their answers would be calculated to expose them to punishment. Tunks v. Vincent, 106 Ky. 829; Edwards v. Logan, 114 Ky. 312; Stewart v. Rose, 24 R. 1759.

It is unnecessary, here, to determine the competency of the evidence of these voters, as to who, they had voted for, as there was other evidence, as to the manner, in which they had voted, and for whom they voted, which applies to the greater number of them, and more than enough to reduce the number of legal votes received by appellant below the number received by the appellee.

The judgment is therefore affirmed, and the clerk of this court will certify same to the Secretary of State and the clerk of the Trimble county court.